436 A.2d 675

**Stephen M. JOHNSON, a minor by his guardian Millard Johnson, Jr. and Millard Johnson, Jr. and Ann Johnson in their own right, Appellants**

v.

**SEARS, ROEBUCK AND COMPANY and John Herron, Marshall A. Bernstein, Esquire and Jules N. Mazis, Esquire, Participating Parties.**

Superior Court of Pennsylvania.

Argued March 18, 1980.

Filed Oct. 30, 1981.

Petition for Allowance of Appeal Denied Jan. 18, 1982.

James M. McMaster, Newtown, for appellants.

Daniel J. Ryan, Philadelphia, submitted a brief on behalf of Sears and Herron, appellees.

Thomas N. O'Neill, Jr., Philadelphia, for participating parties.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

This is an appeal from an order denying appellants' "Petition to Modify Minor's Compromise Settlement" regarding the amount and manner of payment of attorneys' fees. We reverse the order of the lower court and remand the case for proceedings consistent with this opinion.

On January 14, 1974, Stephen M. Johnson, ("the minor") was struck by a truck owned by defendant Sears, Roebuck and Company and driven by defendant John Herron. Stephen Johnson, age eleven, sustained severe personal injuries and was rendered comatose as a result of the accident.[1]

Suit was filed on December 19, 1975 on behalf of the minor and his parents, Ann and Millard Johnson, Jr. The case was prepared and listed for trial June 12, 1978. Six days prior thereto, a settlement conference was held by the lower court, and settlement was reached and approved by order of the lower court on June 29, 1978.

The court below summarized the settlement as follows:

The agreement provided for an immediate payment to Petitioners of $100,000.00; immediate payment of counsel fees of $500,000.00 and the purchase by the Defendants of a lifetime annuity on behalf of the minor with the following provisions: (1) yearly payments of $23,000.00 for the life of the minor, (2) the yearly amount payable under the annuity will increase by three (3%) percent per annum compounded, (3) payments of the amounts due under the annuity will be made monthly, (4) payments under the annuity will continue for a guaranteed period of twenty years, and (5) the annuity will be insured by a company acceptable to the Plaintiffs.

Lower ct. op. at 2.

Soon after the settlement agreement was signed, the Johnsons became dissatisfied with it. They discharged their attorneys, Marshall Bernstein and Jules Mazis, (appellees in the instant action), and retained their present counsel, James M. McMaster. Appellant's new counsel filed a "Petition to Modify Minor's Compromise Settlement" which was denied on March 30, 1979 after a two day hearing before the court which had originally approved the settlement. This appeal followed the denial of that petition. The Johnsons now

---

1. This court received word from both counsel that Stephen M. Johnson died on April 28th, 1980. This information did not affect the reasoning or outcome of our opinion.

allege that the amount received by their former attorneys and the method of payment should be modified. The thrust of their argument is that Mr. Bernstein and Mr. Mazis used an improper method to determine the gross value of the settlement on which to base their attorneys' fees. We agree.

The lower court set forth the computation method used by appellees as follows:

> In computing the gross settlement value on which to base their one-third contingent fee, Respondents first reduced the minor's right to receive the life annuity payments to its present value. The projected payments ($23,-000.00 per annum with a three (3%) percent yearly increment) were multiplied by the anticipated life expectancy of the minor (50 years as computed by an actuary and based on Standard Life Expectancy Tables) resulting in a total of $2,594,170.00. Then, this amount was reduced to present value by six (6%) percent simple interest resulting in a figure of $1,050,422.00. Respondents then added the value of the cash payments, $600,000.00, to the present value of the annuity, $1,050,422.00, to arrive at a figure of $1,650,422.00, which represented the total of all present benefits under the settlement agreement. Respondents then set their contingent fee at $500,000.00, less than one-third of the total value of the settlement.

Lower ct. op. at 5.

The problem we perceive with this computation method is that it provides for the attorneys' contingency fee to be based on the total amount of the Johnsons' future possible payments despite the fact that the Johnsons may never receive that amount. After the expiration of the twenty year period for which the annuity payment is guaranteed, appellants only have a right to receive an annuity payment each year that their son actually lives. Nevertheless, Mr. Bernstein and Mr. Mazis avoided the inherent risk in the annuity settlement and based their attorneys' fees on the

entire amount the Johnsons would receive if their son lived the normal life expectancy of a fifteen-year-old boy.[2]

Mr. Bernstein and Mr. Mazis argue that there is substantial precedent in support of their method for computing the value of the right to receive future payments. *See Frankel v. United States*, 321 F.Supp. 1331 (E.D.Pa.1970), *aff'd. sub nom., Frankel v. Heym*, 465 F.2d 1226 (3rd Cir. 1972); *Vizzini v. Ford Motor Company*, 72 F.R.D. 132 (E.D.Pa.1976), *aff'd*, 569 F.2d 767 (3rd Cir. 1977); *Brodie v. Philadelphia Transportation Company*, 415 Pa. 296, 203 A.2d 657 (1964). Although the same formula was used in these actions to compute damages, whether or not the victim actually lived his or her entire life expectancy became irrelevant because the present value of the future projected loss was immediately paid to the victim or the estate. The victims' attorneys' fees were, therefore, based on amounts actually received by their clients. Mr. Bernstein's and Mr. Mazis' reliance on these cases is misplaced since their attorneys' fees were based on a sum that the Johnsons may never receive.

Mr. Bernstein and Mr. Mazis also argue that the amount of $500,000 was not intended for unrestricted purposes but was created specifically for the purpose of paying the attorneys' fees. We do not agree. This amount was clearly arrived at by taking one-third of the total value of the award which was calculated by adding the total of the lump sums awarded ($600,000) to the value of the annuity payments as calculated by Mr. Bernstein and Mr. Mazis. This

2. We note that Philadelphia Civil Rule 165 was not complied with since there was no physician's report concerning the mental and physical condition attached to the Petition to Compromise Minor's Settlement. Mr. Bernstein and Mr. Mazis claim that the noncompliance is insignificant because the lower court was fully aware of the nature and magnitude of the minor's injuries. Mr. Bernstein and Mr. Mazis based their attorneys' fees on a computation using the normal life expectancy of a *healthy* fifteen-year-old boy. But see *Frankel v. United States*, 321 F.Supp. 1331, 1341-1342 (E.D.Pa.1970), aff'd. sub nom., *Frankel v. Heym*, 465 F.2d 1226 (3rd Cir. 1972) (A neurosurgeon who had conducted studies on the life expectancies of brain-injured, comatose individuals testified that such head injuries would shorten the life expectancy of the individuals).

indicates that the $500,000 was part of the settlement award's gross value. *See* lower ct. op. at 5.

The Johnsons urge us to find that the most equitable method of determining the amount due their former attorneys is to award them one-third of the lump sum payments plus one-third of any periodic payments if and when received. They cite a Workmen's Compensation case, *Greco v. Vulcan Smithing Coal Co.*, 19 Pa.D & C 61 (1932), as the precedent for an attorney receiving his contingent fee as a percentage of each future periodic payment to his client. While this method of payment may have been equitable, it was also mandated by statute. Section 501 of the *Workmen's Compensation Act*, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1021. Considering the nature of annuity settlements and the fact that they may be paid out over an extensive period of time, we believe this method of payment can be both unwieldly and impractical. *But see* Sedgwick and Judge, *The Use of Annuities in Settlement of Personal Injury Cases*, Insurance Counsel Journal, Vol. XLI, No. 4 (October, 1974) 584.

We find that the most equitable method of valuing an annuity for the purpose of determining the amount of attorneys' fees due is by the cost of the annuity. *See* Lilly, *Alternatives to Lump Sum Payments in Personal Injury Cases*, Insurance Counsel Journal, Vol. XLIV, No. 2 (April, 1977) 243, 246. The cost of the annuity takes into account the possibility that the minor may live longer or shorter than his anticipated life expectancy and is priced accordingly. While we agree with Mr. Bernstein's and Mr. Mazis' contention that the lifetime annuity has a value beyond the twenty year guarantee, its cost adequately reflects this value.

The dissent contends that the cost of the annuity is an improper basis for determining the value of the settlement. It then attempts to justify the computation method used by Mr. Bernstein and Mr. Mazis by stating that "[t]he present value of these benefits has long been determined by actuarial tables." This of course is an incorrect statement since the method is only used when, as previously noted, the sum is

actually received by the victim and not when, as here, the sum may never be received because it's based on a contingency.

The dissent attempts to further justify the amount of attorneys' fees by noting that the settlement award adequately met the minor's needs and "that the counsel fees were both fair and reasonable in the light of the amount of settlement." While we agree with the first part of the dissent's finding, we cannot agree with the second. The computation method employed by Mr. Bernstein and Mr. Mazis results in the settlement award being worth more to them than to their clients. We cannot condone this. While we note that the value of the settlement may, in certain cases, exceed the cost of the annuity, we find this situation preferable to the above.

This case is remanded for a hearing to determine the cost of the annuity. The cost of the annuity is then to be added to the lump sum award of $600,000. The lower court is directed to order payment of one-third of this total amount to Mr. Bernstein and Mr. Mazis from the original $600,000 lump sum award. Mr. Bernstein and Mr. Mazis are then to be reimbursed for costs incurred in preparing the suit on behalf of the minor and his parents for trial.

Order of the lower court is reversed, and the case is remanded for proceedings consistent with this opinion.

LIPEZ, J., files a dissenting statement.

LIPEZ, Judge, dissenting:

In my judgment, the majority's use of the cost of the life annuity is an improper basis for determination of the value of the minor's settlement. Its cost is simply a bargaining matter between the defendant and an insurance company, with which the minor is not involved. His sole concern is the benefits it will produce for him during his lifetime; and it is these benefits, resulting from counsel's effort, which serve as the basis for counsel fees. The present value of these benefits has long been determined by actuarial tables.

That is precisely what was done and nothing in this record impugns their use herein.

The trial judge, who was involved in the settlement and its approval, heard the petition to modify. He found that the settlement proposal, including the counsel fees, had been carefully explained to the Johnsons; that it adequately met the needs of the minor; that the counsel fees were both fair and reasonable in the light of the amount of settlement, and therefore denied the petition. His findings come within the wide discretionary area confided to the trial judge in approving counsel fees. It is not our function, absent an abuse of that discretion, to substitute our judgment. No such abuse has been shown here.

I therefore dissent.