182 N.J. Super. 328 (1982)
440 A.2d 1171
RUSSELL TOBIAS, PLAINTIFF,
v.
ANTHONY AUTORE, MICHAEL AUTORE, DANIEL C. PARNES AND COLDWAY FOOD EXPRESS, INC., A CORPORATION OF OHIO, WARREN OCHSE, FARMLAND FOODS, LAUREL HILL TRUCKING CORP., AND TESTERS CATERERS, D/B/A THE ELM ROOM, DEFENDANTS, AND CHARLES KROM AND ALTON KROM, PLAINTIFFS,
v.
DANIEL C. PARNES, GRIMALD PARNES TRUCKING, MICHAEL AUTORE, ANTHONY AUTORE, COLDWAY FOOD EXPRESS, INC., AN OHIO CORPORATION, WARREN OCHSE, FARMLAND FOODS, LAUREL HILL TRUCKING CORPORATION, TESTERS CATERERS, D/B/A THE ELM ROOM, AND JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 8, 1982.
*329 Julius D. Canter for plaintiff Russell Tobias.
No appearance was required on behalf of any of the remaining parties.
SIMPSON, A.J.S.C.
This is an application under R. 1:21-7(f) for approval of an attorney's fee in excess of the contingent fee provided for in the retainer agreement. The retainer set forth the maximum percentages of recovery allowable pursuant to R. 1:21-7(c). Plaintiff Russell Tobias, born January 16, 1959, was an 18-year-old boy when he was severely injured in an automobile accident on September 17, 1977. He and another youth, Charles Krom, were passengers, and Krom was rendered a permanent paraplegic as a result of the accident. Plaintiff suffered permanent injuries to a leg, knee and arm, as well as traumatic brain injury. He is still undergoing psychiatric treatment, and personal injury protection (P.I.P.) benefit payments already total $72,915 for Tobias.
The Tobias case was settled for $175,000 cash "up front," plus "annuity" and "balloon" payments as follows:
1. $1,600 a month, beginning March 1, 1982, for the life of Tobias, with guaranteed payments for 20 years to his heirs or beneficiaries in the event he dies prior to March 1, 2002.
*330 2. Balloon payments, guaranteed to be paid to Tobias or his heirs or beneficiaries if he dies prior to receiving all these cash payments, as follows:

 March 1, 1987 $ 10,000
 March 1, 1992 20,000
 March 1, 1997 30,000
 March 1, 2002 40,000
 March 1, 2007 50,000
 March 1, 2012 60,000
 March 1, 2017 70,000
 March 1, 2022 80,000
 March 1, 2027 90,000
 March 1, 2032 100,000

The total minimum payout, assuming Tobias does not survive the minimum guaranteed annuity payment, period is $1,190,000, and the total payouts, assuming he lives his full life expectancy of a 50-year period, is $1,685,000. The actual present cost of the annuity and balloon payments, however, is $220,000. Two of the defendants, their liability insurance carrier, and another insurance carrier funding the annuity and balloon payments, are all liable for or guarantors of all the payments. Plaintiff has no right to accelerate the payments, however, nor any right to their present discounted value or the $220,000 cost of the funding thereof. Under these circumstances it is believed that all of the payments will be received free of federal income taxes. See Merendino v. F.M.C. Corp., 181 N.J. Super. 503, n. 1 (Law Div. 1981).
In a "structured settlement" the total actual cost is the proper basis upon which to calculate attorneys' contingent fees. Merendino, supra at 509. The "up front" cash of $175,000, plus the cost of the annuity and balloon payments of $220,000, is the total actual cost, or $395,000. Counsel has requested approval of a flat fee of $100,000 plus disbursements of $5,034.20. The fee would be 26.59% of the total recovery, or 25.64% of the net sum recovered calculated in accordance with R. 1:21-7(d), and being 100,000/395,000 - 5,034.20. The maximum fee permitted by R. 1:21-7(c) is $73,463.25, or 18.84% of the net sum recovered ($389,965.80), and is calculated as follows:

*331
 R. 1:21-7(c) % On
(1) First $ 1,000 50 $ 1,000.00 $ 500.00
(2) Next 2,000 40 2,000.00 800.00
(3) Next 47,000 33 1/3 47,000.00 15,666.67
(4) Next 50,000 25 50,000.00 12,500.00
(5) Next 150,000 20 150,000.00 30,000.00
(6) Over 250,000 10 139,965.80 13,996.58
 __________ _________
 $389,965.80 $73,463.25

The total amount of the settlement was placed on the record, and both Tobias and his father agreed to it and to the requested attorney's fee. Although counsel maintained no actual time records, he estimated that he and his associates spent almost 1,700 hours on the case and that the reasonable value of the services on an R. 1:21-7(b) basis was $160,600. As passengers, there was little doubt that both Krom and Tobias would recover damages, but there were insurance coverage problems and excellent results were reached in obtaining substantial contributions from several defendants.
In determining a "reasonable fee in light of all the circumstances" pursuant to R. 1:21-7(f), there are a number of factors to be considered. Seven factors are listed in DR 2-106(A) and are made specifically applicable to contingent fees by R. 1:21-7(e). These guides are helpful in evaluating increased fee applications, but in a case such as this the situation reflected by the companion case (handled by another attorney) should also be considered. Krom settled on a "structured" basis with the same defendants for $375,000 cash "up front," $2,500 a month for 29 years, and the following "balloon" payments:
(1) $50,000 on May 1, 1986
(2) $75,000 on May 1, 1991
(3) $75,000 on May 1, 1996
(4) $100,000 on May 1, 2001
(5) $125,000 on May 1, 2006
(6) $350,000 on May 1, 2010.
*332 All the periodic payments are fixed and guaranteed, with appropriate suvivorship provisions in the event Charles Krom dies before receiving all the monthly or balloon payments. The total cash payments will be over two million dollars, but the present cost of the package was $789,733, being $375,000 cash and the $414,733 cost of the annuities funding the monthly and balloon payments. As noted above, this total actual cost is the proper basis upon which to calculate attorney's contingent fees. Disbursements in the Krom case were $3,533.10, so that the aggregate net sum upon which to calculate contingent attorney's fees, pursuant to R. 1:21-7(d), was $786,199.90. The maximum fee, pursuant to R. 1:21-7(c), was $113,086.97, or 14.38% of the net sum recovered. Counsel for Krom applied under R. 1:21-7(f) for a fee of $150,000, inclusive of the $3,533.10 disbursements, and another assignment judge approved this net fee of $146,466.90, or 18.63% of the net sum recovered. On the basis of the sliding scale, the R. 1:21-7(c)(6) portion of the approved fee was in effect increased from 10% to 16.23%.[1]
In both the Krom and Tobias cases the factors listed under DR 2-106(A) as guides in determining the reasonableness of fees appear to be identical. In other words, the legal skills required, the relatively large amounts involved, the experience and reputation of the lawyers, etc., are similar. Excellent results were obtained in both cases, and since different injuries were involved, the fact that a larger settlement was obtained for Krom than Tobias is of no moment. In both cases three *333 factors suggest entitlement to attorney fee allowances in excess of that allowable pursuant to R. 1:21-7(c):
1. Both youths appear to be heavily dependent upon their fathers. The structured payments will protect them against possible squandering or loss of their damage moneys in the future.
2. The annuity and balloon payment portions of both settlements appear to capitalize upon the power of compound interest at a time when such rates are at all time highs. While it is possible that wise investment of the funds other than by way of annuities and balloon payments would proportionately equal or surpass the total returns to be received in these cases, there is a great risk of contrary results  and such unnecessary risk in the case of severely injured youths in contra-indicated.
3. Valuable tax benefits have been obtained in both cases. When damage settlements are properly structured, the interest income portion of periodic payments out of invested funds are income tax free, as noted in Merendino, supra.[2]
As also noted in Merendino, supra, it is preferable to allow an increased attorney's fee pursuant to R. 1:21-7(f) by adjusting the percentages otherwise allowable under R. 1:21-7(c), rather than simply allowing a flat figure without indicating the method of calculation. For the additional reasons also set forth in Merendino, I believe that the 10% maximum under R. 1:21-7(c)(6) is inadequate to maximize the aggregate benefit curves of attorneys and clients in a case such as this. That percentage is accordingly increased to 20% in this case, for an increase of $13,996.58 and a total attorney's fee of $87,459.83. Disbursements of $5,034.20 are also payable to counsel.
So ordered.
NOTES
[1] The $113,086.97 allowable under R. 1:21-7(c) includes $53,619.99 under subsection (6), or 10% of the $536,199.90 recovery in excess of $250,000. Since the subsection (1) through (5) percentage fees total $59,466.67, the balance of the $146,466.90 fee allowed, or $87,000.23, constituted 16.23% of the $536,199.90.
[2] See also Schultz & Kaplan, "Tax Aspects of Damage Settlements," 51 CPA Journal, 28-31 (Nov. 1981).