Alton **GODWIN** and Karen Godwin, his wife

v.

Victor **SCHRAMM,** United States of America.

Appeal of Kenneth W. **BEHREND.**

Nos. 83–5065, 83–5129 and 83–5130.

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1983.

Decided March 30, 1984.

---

Samuel C. Stretton (argued), Block, New & Stretton, West Chester, Pa., for Kenneth W. Behrend.

Neil L. Conway, Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, Pa., for amicus curiae Pennsylvania Trial Lawyers.

Paul J. Brysh (argued), Anthony M. Mariani, Asst. U.S. Attys., Pittsburgh, Pa., for appellee United States.

Robert A. Zunich (argued), Zimmer & Dice, Oakmont, Pa., for appellees Alton Godwin and Karen Godwin.

Before GIBBONS and SLOVITER, Circuit Judges, and GREEN, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

At issue is the 25 percent statutory limit on attorney's fees in federal tort claims. The plaintiffs below, Alton and Karen God-win, settled their medical malpractice claim against the United States for a cash payment of $1,125,000 and provision for lifetime medical care by the Veterans Administration (VA). Kenneth Behrend, the lawyer who represented the Godwins, appeals from the district court's orders limiting his contingent fee to 25 percent of the cash award and excluding the future medical benefits from the base upon which the fee may be calculated. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Kenneth Behrend and the law firm of Behrend, Aronson & Morrow (jointly referred to as Behrend) were retained by the Godwins following a referral after Godwin suffered injuries while undergoing surgery by Veterans Administration physicians. During the surgery, which was performed to remove growths from Godwin's vocal cords, a laser beam ignited oxygen being administered through a tube in Godwin's throat. Godwin's entire bronchial tract was severely damaged; his left lung is totally impaired, and because scar tissue obstructs his airway Godwin must breathe through a tracheostomy and undergo frequent operations to dilate the airway. He can speak only with the aid of an electronic box. Godwin was 34 years old at the time of the surgery, was a veteran, was disabled from a job related injury, and was married with two young children.

Behrend filed an administrative claim with the Veterans Administration on August 11, 1980 alleging liability of Dr. Victor Schramm, supervising surgeon for the VA. On November 18, 1980, Godwin executed a power of attorney to Behrend that provided for a contingent fee of 40 percent in connection with the prosecution of his "claim against Brunswick and others" for the injuries. App. at 37a. In April 1981, Behrend filed a Pennsylvania state court suit against Brunswick Corporation, the seller

* Hon. Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

of the endotracheal tube used in the operation. That suit was dismissed after some discovery. Behrend also filed suit in state court against Dr. Michael Duvall, the resident who performed the operation, and Dr. Schramm. In May 1981, pursuant to 38 U.S.C. 4116 (1976), the United States removed the case to the United States District Court for the Western District of Pennsylvania, substituted itself as the defendant, and later brought some third party defendants into the case.

In August 1981 Behrend sent the Godwins a letter informing them that their fee "will be limited to 25 percent of the total gross recovery." Behrend did not inform the Godwins that because the case was now a federal tort claim action, it came under 28 U.S.C. § 2678 which limits attorney's fees to 25 percent of a judgment or settlement. Instead, the letter Behrend sent stated, "We have taken this action [25% fee] after reviewing your case and coming to the conclusion that your damages are, indeed, more substantial than was understood at the time the Power of Attorney was signed." App. at 38a. There was no written acceptance by the Godwins, and there is no record of assent by them.

The matter proceeded and ultimately a settlement was negotiated for a cash payment of $1,125,000 and provision for lifetime medical care and treatment at the Veterans Administration Hospital.[1] Behrend counseled the Godwins to reject this proposal and to proceed to trial. He also prepared a settlement sheet which he presented to the Godwins in November 1982. This document, signed by the Godwins, authorized Behrend to approve the settlement and to make distribution in the manner set forth. The settlement sheet calculated the amount "to be received in settlement" as $2,091,000.[2] This sum, which is $966,000 over the cash payment, is based upon Behrend's calculation of the present value of future medical care to Godwin at $4,830,000. Since 80% of Godwin's medical costs would have been paid by the Medicare program, Behrend included 20 percent of the estimated value of that care as part of the settlement proceeds. The estimated value of medical care was based on a life expectancy 75 percent of normal, although there was no conclusive estimate of Godwin's life expectancy and predictions ranged from three or five years to normal. Behrend then added the $966,000 to the cash award to arrive at a figure for settlement proceeds of $2,091,000, and listed his fee as $522,750, or 25 percent of the total. The document provided that Behrend would be paid $350,000 upon settlement and the remainder in six annual installments of $28,791.66. The document also provided for payment upon settlement

1. Paragraph 3 of the settlement agreement provides:

3. That the Veterans Administration and its successors or assigns shall continue to provide full and complete medical care and treatment to Alton Godwin for the rest of his life in accordance with the applicable Veterans Administration statutes, regulations and directives governing delivery of health care services by the Veterans Administration. This includes, but is not limited to, full medical treatment, restorative treatment, maintenance treatment, emergency treatment, psychiatric treatment, hospital care, nursing home care, domiciliary care and all other medical care and services in accordance with the applicable Veterans Administration statutes, regulations and directives. In no event shall the quality of medical care and treatment that has been provided to Alton Godwin to date be diminished or compromised.

Alton Godwin shall be eligible for medical care and treatment as if the injuries he sustained on March 25, 1980, were service connected for the purposes of 38 U.S.C. §§ 610, 612, 614, 618 and 619.
App. at 59a.

2. The explanation in the Settlement Sheet is as follows:

This figure $2,091,000 is computed as follows: cash-$1,125,000 plus 20% of the average value of the medical care to be provided, determined to be $3,220,000 to $6,440,000, which averages $4,830,000. 20% is used as it is assumed, maybe improperly, that federal benefits would have been 80% of this. To the extent that any of the 80% medical benefits would not be provided, counsel waives the right to claim a fee on such higher value of benefits to be provided. 20% of $4,830,000 is $966,000.
App. at 57a.

of approximately $60,000 in expenses, and stated that the signatures of the Godwins were "with the intention of being legally bound."

While Behrend was still urging the Godwins to go to trial, Mrs. Godwin telephoned the district judge. As the judge later stated on the record, Mrs. Godwin said she was confused, "[s]he believed that they were receiving bad advice, that Mr. Behrend had recommended against the settlement, and that Mr. Behrend was charging what she concluded were unreasonable fees which would prevent the Godwins from recovering virtually any money from this case." App. at 647a. The judge stated that the Godwins "were in a quandary as to what to do," and he told her he would address the matter at the conference on Monday morning. *Id.* After this conversation the Godwins decided to accept the government's offer. A settlement conference was held December 13, and the events that transpired there are critical to this appeal.

The district court began the conference by reviewing the settlement agreement, and ruled that the only viable claims were those for the Godwins and not for their children. He then turned to the matter of lawyers' fees, referred to the statutory limit of 25 percent, stated that "no claim or demand for counsel fees may be made for any service rendered by the Veterans Administration in the future," and stated that counsel fees would be $281,250, or 25 percent of the cash settlement of $1,125,000. App. at 609a. Behrend did not object nor did he make any reference to the settlement sheet which had been signed the month before. The participants discussed the purchase of an annuity by the government for the Godwins with some of the proceeds. Behrend then stated that he didn't want to take any responsibility for the enforcement of the agreement because it failed to give the Godwins the "unfettered right to go to civilian medicine." The court stated the agreement was enforceable by an injunction against the Veterans Administration if necessary. A significant colloquy then took place, quoted in full in the appendix to this opinion, during which the district court asked:

Now, are you satisfied with your lawyer?

MR. GODWIN: Yes.

MRS. GODWIN: My understanding is he will be paid off in full?

THE COURT: Yes.

App. at 619a. The judge reiterated that the Godwins should not pay any fee beyond the amount that had been stated. Behrend said that "we are abiding by, of course, the statute, the $281,250," and asked the court whether he would be able to collect approximately $60,000 in expenses. The judge instructed Behrend to file a petition and stated he would decide if any such expenses are recoverable. During this second discussion of fees and expenses, Behrend again failed to mention the settlement sheet. In an order dated December 15, 1982, the court directed payment of $281,-250 to Behrend, Aronson & Morrow.

On December 20 Behrend notified the court that he intended to press a claim for $522,750. Shortly thereafter the Godwins discharged him as their counsel. At a second settlement conference on December 30, 1982, the Godwins expressed their confusion over the amount of the fee. The Godwins referred to letters they had been getting from Behrend. The district court stated its recollection "that before our last conference I directed a question to Mr. Behrend, inquiring whether he intended to charge a fee on the future medical expenses. And it is my recollection that he answered that question in the negative." Behrend replied, "Judge Ziegler, we are not charging on future medical expenses; we are charging on the present worth of those medical expenses," and stated, "I make it very clear that we are going to assert a claim in the amount of some $521,-000." App. at 644a. The Assistant United States Attorney confirmed his recollection that Behrend told the court at the earlier conference there was never any agreement to compute attorney's fees on the value of future medical benefits, and the attorney for the third party defendants also stated he "had the impression that [the court was]

under the impression that he said there was no such agreement." App. at 645a. The court directed that the order of December 15 awarding counsel fee at $281,250 would stand.

Behrend filed a motion for reconsideration of attorney's fees and a petition for assessment of costs. Both were denied by an opinion and orders dated January 18, 1983.

In its opinion sur Behrend's motion for reconsideration, the trial court held that the only power of attorney of record, that dated November 18, 1980, was void, or at least voidable by plaintiffs, because the provision that counsel shall receive 40 percent of any recovery violated the mandate by Congress in 28 U.S.C. § 2678 that no fee under the federal tort claims statute shall exceed 25 percent. The court held that counsel had not shown that the letter of August 3, 1981 (reducing the fee to 25%) had been accepted, and that the settlement sheet, the only document which referred to the need to pay a fee based on the average value of the medical care to be provided, could not be considered an enforceable contract because it lacked valuable consideration.

The court also held that even if the settlement sheet constituted a contract, it was unenforceable on grounds of public policy, illegal, and obtained in violation of DR 2–106(A) of the Code of Professional Responsibility. The court characterized counsel's conduct as the most "egregious example of overreaching by a lawyer" encountered by the court "in 10 years of public service and 22 years at the bar," App. at 14a, and also criticized the caliber of representation by counsel, giving specific examples. App. at 20a–21a.

In addition to limiting counsel fees to 25 percent of the cash payment, the court denied counsel's motion for an award of costs in the sum of $62,015.19 both because counsel had no contract for reimbursement of costs with Godwin in the letter of August 3, 1981, and because the denial "is an appropriate sanction for a lawyer who intentionally attempts to extract an illegal fee from a person to whom Congress and the Supreme Court have accorded special consideration."

Behrend appealed from the district court's three orders, and the appeals were consolidated before this court. The Godwins and the United States have each filed a brief as appellees in support of the orders of the district court. The Pennsylvania Trial Lawyers Association has filed a brief amicus curiae in support of Behrend's position.

## II.

### ATTORNEY'S FEES

#### A. Structured Settlements

Appellant and the amicus curiae suggest that the district court's decision will hinder the development of structured settlements and that the advantages of such settlements will be lost to the parties and the judicial system. Generally, a structured settlement entails a cash payment made on settlement, sufficient to cover at least special damages such as medical bills incurred and past lost wages, and guaranteed periodic payments in the future. Such payments are commonly funded by an annuity policy. This settlement technique has been both applauded and criticized. Its proponents point to the tax free status of the payments if certain requirements are observed and the "spendthrift preventative nature" of periodic payments. *See, e.g.,* 7 R. Conason, Damages in Tort Actions §§ 82.20, 83.02 (1982); Krause, *The Benefits of Structured Settlements*, N.Y.St.Bar J., Jan. 1982, at 13. Critics stress that the defendant's insurance company might not pass on to the plaintiff some of the cost savings achieved through this form of settlement, and that the possibility of carrier insolvency is also a significant drawback. *See, e.g.,* Broder, *Structured Settlements: The Argument Against*, 1981 Pers.Inj.Ann. 838. All agree that the manner in which contingent fees are to be computed in a structured settlement with periodic payments, particularly when there is a rever-

sion in the event of death, poses a dilemma. *See* Conason at § 83.3.

Since the use of a structured settlement as a vehicle for resolving major tort litigation is "still in its embryonic stages", *see* Hyland & Keeley, *Using the Structured Settlement,* Nat'l L.J., Dec. 19, 1983, at 15, it is unlikely that Congress contemplated how such benefits were to be calculated in the 1966 revision of section 2678 of the Federal Tort Claims Act. That provision states, in relevant part, "No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered ... or settlement made" in a federal tort claim. 28 U.S.C. § 2678 (1982).

This replaced the requirement in the original statute under which the district court was to determine and allow a reasonable attorney fee of up to 20 percent of the recovery. The requirement of district court approval of the fee in each case had proved burdensome. The authors of the 1966 amendment explained, "The actual amount of attorneys fees within the statutory limit ... is made a matter for determination between the litigant and his attorney." S.Rep. 1327, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad. News 2515, 2521. To ease court congestion, the 1966 Act also provided for administrative settlement of tort claims. *Id.* at 2516. At the same time that Congress provided for determination of the fee by the parties, it also sought to discourage attorney overreaching by keeping in place the language penalizing attorneys who do not abide by the 25 percent limitation.[3] *See United States v. Cohen,* 389 F.2d 689, 691 (5th Cir.1967); *Schwartz v. United States,* 381 F.2d 627, 631 (3d Cir.1967).

The application of the 25 percent limit to structured settlements has rarely been considered. In a state court case, the Superior Court of Pennsylvania distinguished between an award of counsel fees where the settlement formula is based on the right to receive future payments with the present value of the future projected loss immediately paid to the victim, and an award of counsel fees which the attorneys seek to base on a sum the client may never receive. In *Johnson v. Sears, Roebuck & Co.,* 291 Pa.Super. 625, 629, 436 A.2d 675, 677 (1981), the court held that attorney's fees may only be based on amounts actually received by their clients. Thus, the *Johnson* court held that where the future payments were funded by an annuity policy, the cost of the annuity represented the base on which attorney's fees were due. 291 Pa.Super. at 630, 436 A.2d at 678. The dissenting judge would have used the present value of the future benefits as determined by actuarial tables as the basis for computation of the fee.

Not only is there a difference of opinion as to computation of the fee when the settlement provides for payment of fixed sums in the future, but the situation becomes yet cloudier when the settlement contains an item, such as the provision of future medical services, which carries the inherent contingencies of type, quantity and future cost of service as well as of the victim's future medical condition and life expectancy. When the ultimate value of the settlement is uncertain, clients may be paying the lawyer more than the statutory 25 percent of what they actually will receive if the beneficiary dies before the passage of the anticipated period upon which the settlement was based.

It may be, as appellant suggests, that contingent services are susceptible of determination by experts and reducible to present value. If so, computation of counsel fee on such a basis may not violate the literal terms of the statutory maximum fixed by section 2678, provided there are adequate findings by the district court as to present value supported by the record.

---

**3.** That language is, "Any attorney who charges, demands, receives, or collects for services rendered in connection with such claim any amount in excess of that allowed under this section, if recovery be had, shall be fined not more than $2,000 or imprisoned not more than one year, or both." 28 U.S.C. § 2678 (1982).

Nonetheless, we see substantial difficulties that may arise in applying section 2678 to deferred payment settlements or settlements based on provision of contingent services. In enacting the Federal Tort Claims Act in 1946, Congress showed a special solicitude for persons injured by federal officers. The limitation of the amount of counsel fee reflects congressional concern that the victims of federal torts be treated fairly and equitably. *See* S.Rep. 1327, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Ad.News 2515, 2521. Nothing in the legislative history of the 1966 amendments suggests that there was any diminution of this congressional concern.

It is apparent that if an attorney demands payment of a fee based on the value of deferred payments reduced to present value, the federal victim may be left destitute. For example, a settlement providing for $100,000 cash at time of signing and future payments which, reduced to present value, can be found to be worth an additional $400,000, may generate a demand for prompt payment of counsel fee in the amount of $125,000, representing 25 percent of the settlement value of $500,000. Even though this amount is within the statutory limit, a requirement that the tort victim produce the funds for the fee at that time would not only exhaust the immediate payment but could put the client in debt and subject to attachment of assets. As is known, such matters are not always resolved amicably between counsel and the client.

In the above illustration, the concern is not the amount of the fee but the method of payment. If the lawyer's payment were tied to payments as received by the client, the problem for the client would be alleviated. However, this approach was rejected by the Seventh Circuit. In *Robak v. United States*, 658 F.2d 471 (7th Cir.1981), a settlement award of $900,000 for a rubella syndrome child provided for cash payment of $300,000 and the remainder in the form of a reversionary trust, with the money to be disbursed as needed to care for the child and the remainder, if any, to revert to the government at her death. The district court limited the attorney's fee to amounts proportional to and concurrent with disbursement of the funds. 503 F.Supp. 982, 983, 984–85 (1980). In reversing on this issue, the Seventh Circuit held the trial court exceeded its authority under section 2678.

*Robak* is distinguishable from the facts before us because the $600,000 balance was set aside in the trust for the plaintiff's benefit, albeit payment was contingent on the child's survival. Therefore, we venture no opinion as to whether we would be inclined to follow that circuit's approach. We note that in *Johnson*, the Pennsylvania Superior Court also characterized payment of attorney's fees as a percentage of each future periodic payment to the client as "both unwieldly and impractical", 291 Pa. Super. at 630, 436 A.2d at 678, even though the court recognized that the Pennsylvania Workmen's Compensation Act mandates this method of payment.

When the settlement provides for future services, rather than funds, the concomitant difficulty in setting the appropriate fee is compounded. The district court here focused on the contingent nature of the benefit to Godwin when it stated of the fee demand, "It is illegal because 25 percent of an unknown is zero." App. at 17a. The district court appears to have taken too narrow a view of section 2678. The parties may anticipate varying forms of damage awards and tailor counsel fees accordingly. There is no indication that Congress intended to prohibit a litigant and attorney from agreeing, for example, to forgo a large cash award in favor of a substantial package of benefits, to assign a present value to the present value to the benefits and to allot the lawyer a share of that figure. The lawyer's share would not be more than s/he bargained for at the outset of the litigation. *See Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1111 (3d Cir.1979).

It is unfortunate that the 1966 Amendments removed the requirement for district court approval of counsel fees in all federal tort claims actions. In cases where the

settlement is in a form other than a lump sum cash award, district court supervision and approval could obviate many of the problems referred to above. Indeed, the district court may have inherent authority in such cases. *See, e.g., Dunn v. H.K. Porter Co.,* 602 F.2d at 1112 n. 10; *Schlesinger v. Teitelbaum,* 475 F.2d 137, 140 (3d Cir.), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973). In light of the competing social policies and the absence of any congressional illumination, it would be preferable if Congress were to determine the most efficacious method to encourage innovative forms of settlement without chilling or penalizing counsel who have pursued settlements that maximize their clients' benefit and conserve judicial resources, *see Robak,* 658 F.2d at 480 n. 28, and at the same time, to protect federal tort victims from unreasonable payments to their lawyers. Until Congress sheds light on these questions, we suggest *infra* a number of considerations relevant to an evaluation of fees based on future services in a structured settlement. *See* typescript at 18.

### B. Waiver of Additional Counsel Fee

■ Because of the unique circumstances of this case, we can dispose of the appeal without applying section 2678 to the counsel fees. We agree with appellees Godwins and the United States that Behrend is precluded from seeking a larger attorney fee by the doctrine of equitable estoppel, which prevents a party from assuming a position inconsistent with an earlier position upon which another party relied. *See Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 843–44 (1975); *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196–97, 27 A.2d 20, 23 (1942). *See also Morrison-Knudsen Co. v. Rocky Mountain Chapter, N.E.C.A.,* 370 F.2d 463, 467 (10th Cir.1966).

Before the beginning of the December 13, 1982 conference, in response to the court's inquiry, Behrend specifically denied that he had an agreement for counsel fees based on future medical services. *See* App. at 647a. His subsequent explanation that what he was seeking was not a fee based on future medical services but rather a fee based on the present value of such services, App. at 643a, is simply unpersuasive.

If indeed there had been any misunderstanding, as Behrend contends, he had ample opportunity to clarify his position during the conference on December 13. On several occasions during that conference, the district court stated that Behrend's fee would be $281,250, 25 percent of the cash award. App. at 609a, 610a. Behrend stated thereafter that he was "abiding by ... the $281,250.00." App. at 621a. He did not produce or mention the settlement sheet that he had given the Godwins the month before. It was not until after the court's order directing payment of $281,250 to Behrend's law firm that Behrend notified the court of his intention to seek nearly twice that amount.[4] The court subsequently stated that after this discussion at the conference on December 13 regarding the counsel fee "the Gowins stated on the record that they felt the settlement was fair and reasonable." *See* App. at 647a.

These circumstances provide an adequate basis to affirm the district court's order with regard to the amount of attorney's fees. Our standard on review is whether the court abused its discretion, *see, e.g., Dunn v. H.K. Porter Co.,* 602 F.2d at 1112 n. 10; *Schlesinger v. Teitelbaum,* 475 F.2d at 140, a standard which places a considerable burden on appellant. *See Lindy Brothers Builders, Inc. v. American Radiator,* 540 F.2d 102, 115–16 (3d Cir.1976). As this court explained in *Dunn,* the factors to be considered by the trial court include

the manner into which the contract was entered, the status and sophistication of the plaintiffs, whether the source of the fee payment is a settlement fund or a tax

---

**4.** In the meantime the Godwins had begun negotiating the purchase of an annuity with part of their cash award. According to the appellant's own figure, the new demand would have taken 46 percent of the Godwins' cash award.

against the defendants, the size of the proposed award and whether the fee allowed is sufficient to encourage capable counsel to undertake such litigation in the future.

602 F.2d at 1110. Most of these factors were referred to by the district court in its opinion. App. at 19a–21a.

We do not imply that a fee may not be based on the value of services to be provided the client in the future where that possibility has been fully explained to the client at the time the fee contract is signed, the services to be provided are clearly the product of the litigation and/or the settlement negotiations, the services are susceptible of accurate monetary evaluation and reduction to value, and there are findings by the trial court on the value of the services and the equity to the plaintiffs of the proposed method of payment. In this case, these factors are conspicuously absent.

The nature and applicability of a contract, if any, between the Godwins and Behrend covering the fees to be paid in litigation with the United States is ambiguous. Behrend's reliance on the November settlement sheet is troublesome because it was signed only after conciliation conferences had been conducted and settlement was on the way, and after Behrend had written the district court on September 29 requesting that action on the issue of counsel fee be deferred. App. at 56a. Although an associate of Behrend averred that he went over the settlement fee with

Mr. Godwin, it is undisputed that the document was signed by Mr. Godwin while he was in the VA Hospital having his airway dilated, and on his release he took it home for his wife's signature in Ohio, App. at 633a, facts which do not appear to comport with the lawyer's obligation to make discussion of fees "part of the full consideration with the client of all aspects of a structured settlement...." Lampo & Waldeck, *Structured Settlements: A Primer*, 39 J.Mo.Bar 181, 186 (1983). *See also* 7 R. Conason, Damages in Tort Actions § 83.-03(3), .03(6).

In light of all the circumstances in this case, we cannot hold that the district court abused its discretion in denying Behrend's petition for additional counsel fee.[5]

### III.
### *Costs and Expenses*

Behrend also appeals from the denial of his "right to be reimbursed for the substantial legal costs and expenses incurred in representing the Godwins," appellant's brief at 34, which total $62,015.19. We need not reach the district court's holding that costs can be denied as an appropriate sanction for what the court regarded as Behrend's attempt to extract an illegal fee. Instead, we affirm the court's denial of costs on another basis.

■ As set forth above, the district court gave Behrend leave to file a petition for reimbursement of expenses.[6] The petition

---

**5.** In light of our disposition, we do not reach the district court's apparent finding that Behrend was not responsible for obtaining the benefit of the medical services. In its opinion, the district court stated that "[p]laintiffs will receive those benefits to which they are entitled whether they retained counsel or not", that the VA provided medical care for 2½ years before the settlement, for seven months before counsel even secured a power of attorney, and that "the promise to continue such care in the future bears little relation to counsel's efforts." App. at 16a. We have some difficulty reconciling these statements with the court's earlier statement that "[i]f Mr. Godwin proceeds to judgment in this case rather than accept a proposal by the United States by virtue of that judgment, he will not qualify for future treatment by the

Veterans Administration." App. at 602a. We need not resolve this issue.

**6.** At the conference on December 13, 1982, Behrend indicated that he sought recovery of expenses from the Godwins, since he stated, "We have discussed with Mr. and Mrs. Godwin that our expense on their behalf was about $60,000, and whether they intend to pay that or not should be mentioned. In your statement it appeared as though they would not pay that." App. at 621A. In response, the court stated, "The way we will handle any claim for expenses in prosecuting this case is that Mr. Behrend will file a petition with the Judge. The Judge will look at it. If he decides any such expenses are recoverable, an Order will be entered." As pointed out in the text, Behrend did not file a petition for reimbursement from the Godwins.

filed by Behrend evidently sought costs from the United States as it named the Godwins as petitioners and asked that "this Honorable Court award them costs of $62,015." App. at 187a–88a. The statute providing for costs in suits against the United States limits a judgment for costs to the "prevailing party." 28 U.S.C. § 2412 (1982). Although the settling party is the "prevailing party," *see Maher v. Gagne*, 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980), the settlement agreement provided for "full settlement and satisfaction of any and all claims," which extinguished the Godwins' claim, and Behrend's derivative claim, if any, for reimbursement from the Government.

Behrend's position is somewhat equivocal but he does not appear to contend that he is entitled to reimbursement from the Godwins. The district court found that there was no contractual basis on which to award such reimbursement, and we agree. As the court viewed the documents, only the letter from Behrend to the Godwins dated August 3, 1981 could be deemed an implied contract, and that document "failed to include any provision for reimbursement of costs." App. at 21a. Furthermore, if Behrend had any viable claim against the Godwins for costs, it has not been preserved. In response to the court's invitation to file a petition for expenses, Behrend filed a petition on behalf of the Godwins, not one on behalf of himself seeking recovery from the Godwins. It was the petition on behalf of the Godwins that the district court denied, and which is the subject of this appeal. Since there is no basis for awarding costs against the government, and no petition for reimbursement of costs from the Godwins was timely filed by Behrend and has therefore been waived, we will affirm the district court's order denying costs.

For the reasons set forth, the judgment of the district court will be affirmed.

## APPENDIX

*Excerpt of Conference on December 13, 1982*

Now, are you satisfied with your lawyer?

MR. GOWIN: Yes.

MRS. GODWIN: My understanding is he will be paid off in full?

THE COURT: Yes. Do you have any complaints about any representation that you have received in this case?

MRS. GODWIN: Do you?

It is very confusing.

THE COURT: We are here to try to make it understandable.

MRS. GODWIN: Somewhere along the line I misunderstood, and so did my husband.

THE COURT: Well, you understand that you do not have to pay anything on medical in the past or in the future; do you understand that?

MRS. GODWIN: Yes, sir.

THE COURT: And if anyone should make such a claim, I want you to bring it to my attention immediately. What we have addressed here is what you will receive and what your lawyer will receive, and to protect your lawyer I am obligated to inquire whether you have any questions or any complaints at this time, because they should be put on the record.

MRS. GODWIN: I have the question of, if we have another contract with our lawyer, other than the agreement, my understanding is that he has been paid?

THE COURT: The payment to lawyers under these types of cases are controlled by the Court. And any agreement to the contrary is now void.

MRS. GODWIN: Okay.

THE COURT: And you should not pay any bill to anybody other than what I have indicated unless I otherwise order it. Do you understand that?

MR. GOWIN: Yes.

THE COURT: And you are free to call my office at any time to advise me of any claims or demands by anybody, any of your present lawyers or any other lawyers who may come to see you. Do you understand that?

MRS. GODWIN: Yes, Sir.

THE COURT: And if anybody harasses you or bothers you down there, while I am not policeman, I do have certain responsibilities, and I will be pleased to listen to any problems that may occur in the future.

MRS. GODWIN: Yes.

THE COURT: Do you understand that?

MRS. GODWIN: Yes, Sir.

Do you?

MR. GODWIN: Yes.

MR. BEHREND: I want to bring something up Your Honor said, and we are abiding by, or course, the statute, the $281,250.00. We have discussed with Mr. and Mrs. Godwin that our expense on their behalf was about $60,000.00, and whether they intend to pay that or not should be mentioned. In your statement it appeared as though they would not pay that.

THE COURT: I want to repeat what I said. You are to pay no one anything unless otherwise ordered by the Court. The way we will handle any claim for expenses in prosecuting this case is that Mr. Behrend will file a petition with the Judge. The Judge will look at it. If he decides any such expenses are recoverable, an Order will be entered.

What I want to avoid is you people receiving a bill now, in the next year or in the future for legal fees, expenses incurred, or other types of costs. Don't pay them unless otherwise ordered by the Judge. Do you understand?

MR. GODWIN: Yes.

MRS. GODWIN: Yes.