Floyd G. WYATT; Carol Wyatt, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 85-1131.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1985.

Decided Feb. 7, 1986.

Daniel M. Laville, Asst. U.S. Atty., Grand Rapids, Mich., John F. Cordes and Constance Wynn, argued, Dept. of Justice, Civil Div., Washington, D.C., for defendant-appellant.

Gary C. Newton, argued, Sloan Benefiel & Farrer, Kalamazoo, Mich., for plaintiffs-appellees.

Before MERRITT and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

In 1981, Floyd Wyatt, a federal employee on a military base, filed a Federal Tort Claims Act suit after losing four fingers during operation of a forklift. Following extensive discovery, the parties agreed to a structured settlement in February 1983.[1] The structured settlement, which was acceptable to Wyatt, provided for an initial cash payment of $153,626, and for deferred payments in future years. As a part of the settlement, the government was to purchase two annuities at a total cost of $119,702. One of the annuities would yield monthly payments of $800 to Wyatt for twenty years or during his lifetime, which-

---

1. Plaintiff Wyatt, after consulting with his counsel, rejected the government's offer to make a lump sum settlement in the amount of $280,000.

ever was the longer period. This would bring about a guaranty of at least $192,000 over this period of time. The second annuity would pay Wyatt periodic lump sums totalling $200,000 and be distributed as follows: $25,000 after five years, $25,000 after ten years, $50,000 after fifteen years, $100,000 after twenty years.

Plaintiffs' attorney, who is the real party in interest in this appeal, submitted a proposed judgment providing for payment of $95,626 in attorney's fees and $25,000 in litigation costs. Wyatt and his wife, who was also a party in the proceeding, acknowledged that they understood that these amounts would be deducted from the initial cash settlement,[2] and made no objection to their attorneys' calculation of and request for fees and costs.

■ The government objected to the amount of attorneys' fees, claiming that the award violated the 25% limitation imposed by the Federal Tort Claims Act.[3] The government has standing to challenge the amount of attorneys' fees to be paid to plaintiffs' attorney. *See Allen v. United States*, 606 F.2d 432 (4th Cir.1979). The government argued before the district court that the Act requires that attorneys' fees be calculated on the basis of the cost of the settlement package to the government, the equivalent of the actual present value of the total settlement to the plaintiff in this case. The total settlement cost to the government was $273,328 (the initial cash settlement of $153,626 and the cost of purchasing the annuities, $119,702). Based on this calculation of the total costs of the settlement, the government contends that the maximum allowable attorney fee should therefore be $68,332.

The district court ruled that in a structured settlement, the base figure upon which an attorney fee award is to be determined under the Act in question is the "present value of the settlement to the plaintiff" and not the cost to the government. He denied, however, the government's request for an evidentiary hearing as to the actual present value of the structured settlement, and instead relied on the representations of plaintiffs' counsel to conclude that the package had "conservatively" a value of $385,000. After deducting the court litigation costs of approximately $25,000, the district court awarded attorney fees of $89,870, which he calculated to be the 25% maximum fee amount allowable.[4]

The sole question in this appeal is whether the district court used a proper legal standard in determining the amount of plaintiffs' attorneys' fees allowable under the Federal Tort Claims Act.

As far as we can determine, federal courts have not squarely addressed standards or methods under this Act for attorneys' fee claims under a structured settlement arrangement. There is dicta in one decision that mentions the issue, *Godwin v. Schramm*, 731 F.2d 153 (3d Cir.), *cert. denied sub nom., Behrend v. Godwin*, —— U.S. ——, 105 S.Ct. 250, 83 L.Ed.2d 187

---

**2.** The Wyatts would receive nothing from the initial payment proceeds since the balance of approximately $33,000 would represent sums due the workmen's compensation carrier which had previously made these payments to Floyd Wyatt or for his benefit.

There is no indication that the workmen's compensation insurance company which received this subrogation benefit from the structured settlement was called upon to share any part of the fees or costs charged the Wyatts. Thus, as consequence of this settlement which the Wyatts' counsel argued was of great advantage to them, it would have taken them almost ten years, if Wyatt lived that long, to receive an amount equivalent to fees and expenses proposed to be paid to their attorney immediately upon approval of this structured arrangement.

We have some doubt as to the benefit of this particular settlement over the $280,000 cash settlement proposed by the government.

**3.** 28 U.S.C. § 2678 provides, in part:

No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title or any settlement made pursuant to section 2677 of this title....

**4.** Attorney for plaintiffs apparently does not contest for purposes of this appeal the deduction of litigation expenses before applying the 25% for the attorney's fee. We therefore do not have occasion to address this matter.

(1984), but there is no definitive determination of a proper standard to apply in this situation. State courts, however, have addressed the calculation of attorney fees in structured settlement arrangements.

The trial judge found unpersuasive the government's argument that 25% of "the amount appropriated" for the settlement to be an equivalent base representing the cost of the settlement to the government. The "amount appropriated" equivalence came from the government's reference to the legislative history of 28 U.S.C. § 2678. *See The Federal Tort Claims Act—a Statutory Interpretation*, 35 Geo.L.J. 1, which considered the hearings in H.R. 5373 and H.R. 6463 before the House Judiciary Committee, 77th Cong., 2d Sess. 49 (1942). Prior to enactment of the present Federal Tort Claims Act, limitations on fee awards were made with reference to appropriations on private relief bills. Attorney fees were allowed based on the "amount appropriated for a particular settlement." The trial judge, although unpersuaded, acknowledged that the argument of the government "has force." We are persuaded by the government's argument, and we therefore reverse.

We are not in disagreement with the district court that the Federal Tort Claims Act is "remedial and must be liberally construed." *See United States v. Alexander*, 238 F.2d 314 (5th Cir.1956); *O'Toole v. United States*, 206 F.2d 912 (3d Cir.1953). It is to be liberally construed, however, in favor of the *claimant, not* the claimant's *attorney.* In our view, the construction placed on the Act by the district court in this case was inappropriate, liberal to the attorney, not to the claimants whom he represented.

▮ While we disagree with the result reached by the district court, we do not take issue with the trial judge's reference to "the present value of the settlement" to be the "proper base amount for determining an attorney fee in this structured settlement." Unlike the district court in this case, it is clear to us that absent the submission of any contrary evidence the present value of the structured settlement in this case was, in fact, the *cost* of that settlement, namely, what it took in money to produce the agreed settlement payments over the entire period involved. No evidence was presented to show that the "present value" of this settlement was anything more than its actual cost of $273,328. The district judge merely indicated that he was "persuaded by the argument in plaintiff's brief that the present value to plaintiffs of this settlement is conservatively $385,000." [5]

The basis of the argument made by plaintiffs' attorney and accepted by the district court was that the court should look to "unique" benefits to the plaintiff in this type of settlement, involving payments spread over future installments with supposed beneficial tax consequences. Plaintiffs' attorney admits that "this benefit to the injured plaintiff is intangible, yet very real and important to the plaintiff as well as his attorney...." (Appellee's Brief at 13). Evidently, supposed tax and other intangible benefits are speculative at best. Plaintiffs' attorney does not address other alternatives available to an injured plaintiff such as investment of lump sum settlement proceeds in government or municipal bonds, or in other types of secured investments and/or annuities that would produce favorable tax consequences. The plaintiffs' attorney also argues that a provision for assured payments in the future in the form of a structured settlement would "prevent plaintiffs from squandering a recovery and ending up with nothing." (Appellee's Brief at 12). We are not impressed

---

**5.** Plaintiff-appellee's brief submits a supposed "present value of the annuity to the Plaintiff" to be "conservatively $382,000," because alleged "tax savings ... have a value of about $107,730." (Appellee's Brief at 16). At the same time, the brief mentions that "Mr. & Mrs. Wyatt are currently separated and may be divorced" and therefore Mr. Wyatt's exact tax bracket may be uncertain. In light of that uncertainty, Plaintiff's attorney purports to adopt a "conservative" rate. (Appellee's Brief at 15). It is not suggested as to how settlement proceeds would be divided if a divorce did occur.

by these arguments about some added value to the plaintiffs through the device of deferring payments in the future. Rather we agree with the rationale expressed in a medical malpractice case where the court was determining appropriate attorney fees with respect to this type of settlement:

> In determining the amount of the recovery on which the fee is to be based, the court must calculate the fair market value—or the present cost—of the settlement fund. Of course, when a settlement calls for a single cash payment, there is no difficulty in determining the recovery amount. When the parties establish a "structured settlement," as in this case, then the recovery amount cannot be determined solely by reference to the aggregate amount of expected cash payments to be made in the future. Rather, the court is required to establish the present value of the settlement fund out of which future payments are to be made. The reasons for this approach are explained in *Merendino v. FMC Corporation*, 181 N.J.Super. 503, 509–10, 438 A.2d 365 (Law Div.1981).
>
> . . . .
>
> As stated by Judge Arthur J. Simpson, Jr., in *Tobias v. Autore*, 182 N.J.Super. 328, 330, 440 A.2d 1171 (Law Div.1982), "in a 'structured settlement' the total actual cost is the proper basis upon which to calculate attorneys' contingent fees." The "up front" cash of $325,-000.00, plus the cost of the annuity and balloon payments of $212,400.00, or $537,400.00, constitute the total actual cost.

*Donaghy v. Napoleon,* 543 F.Supp. 112, 113–14 (D.N.J.1982).[6]

Another appellate court, albeit in a somewhat different context, has considered the problem inherent in this case involving a 25% fee award in an FTCA case to the injured plaintiff's attorney. That case involved an action by the district court in a structured settlement limiting the attorney to 25% of the cash amount paid, omitting

any fee for future "lifetime medical care and treatment." We agree with that court's general discussion and description of the type of settlement involved in that case and in the instant case:

> Generally, a structured settlement entails a cash payment made on settlement, sufficient to cover at least special damages such as medical bills incurred and past lost wages, and guaranteed periodic payments in the future. Such payments are commonly funded by an annuity policy. This settlement technique has been both applauded and criticized. Its proponents point to the tax free status of the payments if certain requirements are observed and the "spendthrift preventative nature" of periodic payments. *See, e.g.,* 7 R. Conason, Damages in Tort Actions §§ 82.20, 83.02 (1982); Krause, *The Benefits of Structured Settlements,* N.Y. St.Bar J., Jan. 1982, at 13. Critics stress that the defendant's insurance company might not pass on to the plaintiff some of the cost savings achieved through this form of settlement, and that the possibility of carrier insolvency is also a significant drawback. *See e.g.,* Broder, *Structured Settlements: The Argument Against,* 1981 Pers.Inj.Ann. 838. All agree that the manner in which contingent fees are to be computed in a structured settlement with periodic payments, particularly when there is a reversion in the event of death, poses a dilemma. *See* Conason at § 83.3.
>
> Since the use of a structured settlement as a vehicle for resolving major tort litigation is "still in its embryonic stages," *see* Hyland & Keeley, *Using the Structured Settlement,* Nat'l L.J., Dec. 19, 1983, at 15, it is unlikely that Congress contemplated how such benefits were to be calculated in the 1966 revision of section 2678 of the Federal Tort Claims Act.

*Godwin v. Schram,* 731 F.2d at 157–58.

The *Godwin* court noted the case of *Johnson v. Sears, Roebuck & Co.,* 291 Pa. Super. 625, 436 A.2d 675 (1981) which held,

---

**6.** The situation in *Donaghy* involved "fixed and guaranteed" periodic payments "with appropriate survivorship provisions," and it was "be- lieved that the payments will be received free of federal income taxes." 543 F.Supp. at 114.

(according to Judge Sloviter) "that where the future payments [in a structured settlement] were funded by an annuity policy, the cost of the annuity represented the base on which attorney's fees were due. 291 Pa.Super. at 630, 436 A.2d at 678. The dissenting judge would have used the present value of the future benefits as determined by actuarial tables ..." 731 F.2d at 158. The *Godwin* court then went on to observe:

> It may be, as appellant suggests, that contingent services are susceptible of determination by experts and reducible to present value. If so, computation of counsel fee on such a basis may not violate the literal terms of the statutory maximum fixed by section 2678, provided there are adequate findings by the district court as to present value supported by the record.

731 F.2d at 158.

We share the concern of the court in *Godwin* that payment in full on the front end of a 25% attorney fee allowed under § 2678 where substantial payments are to be made to the claimant-plaintiff in the future may work a serious hardship on the very person intended to be benefited by FTCA, and "such matters are not always settled amicably between counsel and the client." 731 F.2d at 159. *Godwin* is distinguishable from this case in that it involved the difficult matter of assessing and placing a present monetary value to future lifetime medical services and care; but we have cited at length from what is essentially dicta in that case, because it addresses the concerns that we share in determining a proper standard to apply to attorney fees in this type of FTCA settlement.[7] In any event we agree fully with the observation

> the lawyer's share would not be more than s/he bargained for at the outset of the litigation. *See Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1111 (3d Cir.1979).

731 F.2d at 159.

One other federal appellate court has considered a related but different attorney

fee problem in an FTCA case involving the case of an infant plaintiff where damages were placed in a reversionary trust for her benefit by agreement from which trust monies as needed for the minor plaintiff's benefit would be withdrawn. *See Robak v. United States*, 658 F.2d 471 (7th Cir.1981). The district court in *Robak* had determined that "plaintiffs' attorneys are to be paid their fee, a percentage of the recovery, only proportionately to and concurrent with the actual disbursement of funds from the trust." 658 F.2d at 479. This ruling was held to be "beyond its authority", because the district court was required to "accept this preexisting arrangement" on fees which fell within the statutory maximum. *Robak*, 658 F.2d at 479, 480. It is unclear, however, in that case just how much fee was agreed upon and how it was calculated.

█ In the case at bar apparently plaintiffs were amenable to payment of attorney fees to their attorney (assuming they understood fully the import and impact of such agreement) upon approval of the settlement and the amount of the fees. Absent any such pre-existing arrangement or agreement about how and when fees were to be disbursed, we would see no objection to allowing the plaintiffs' attorney to receive 25% of each payment made to plaintiffs under the structured settlement. We do not interpret any of the cases heretofore cited as necessarily precluding this type of determination and payment of attorney fees under the Federal Tort Claims Act. For examples of state court approvals of this type of arrangement, see *Sayble v. Feinman*, 76 Cal.App.3d 509, 142 Cal.Rptr. 895 (1978) and *Cardenas v. Ramsey County*, 322 N.W.2d 191 (Minn.1982). This, of course, could involve practical difficulties for the attorney but the latter may always protect his or her interest by agreement with the client.

---

**7.** The language cited from *Godwin* is dicta, as acknowledged by the district court in the instant case, because *Godwin* disposed of the lawyer fee dispute on appeal without applying 28 U.S.C. § 2678.

There is no indication that Congress intended to prohibit a litigant and attorney from agreeing, for example, to forgo a large cash award in favor of a substantial package of benefits, to assign a present value to the benefits and to allot the lawyer a share of that figure.

*Godwin,* 731 F.2d at 159.

Any such agreement reached as to "present value" and amount of attorney fees, however, must be subject to the approval of the district court so that it may ascertain, based on adequate proof, that the fee does not exceed the limitation of 28 U.S.C. § 2678. In this case, had the district judge entertained any doubt that the cost of the settlement did not reflect the reasonable present cash value of the entire structured settlement, he should have conducted a hearing with adequate opportunity for development of proof of such value by the plaintiff's attorney, the government, and the plaintiffs themselves. Thus, if the district court were "unpersuaded" by what the government demonstrated as cost, which it properly argued in this case to be equivalent to the actual present cash value of the settlement, then the court must require proof to establish the present value base upon which the 25% maximum fee is to be calculated. We emphasize that it is within the reasonable discretion of the trial court, absent an agreement which is fair and equitable to the FTCA claimant, to determine the manner and amount of attorney fee payment, within the parameters of 28 U.S.C. § 2678. The 25% limitation set out in the statute may not, of course, be exceeded, and it is to be based upon the present value of the total settlement, excluding any speculative and intangible benefits to the plaintiff.

In reaching this decision, we have not in any way intended to discourage, where helpful or beneficial, a structured settlement in a Federal Tort Claims Act (or any other) context. We appreciate that lawyers may render their clients in appropriate circumstances a special service by devising deferred payments or arranged settlements to serve particular purposes that a cash settlement could not reach. *See* Dombroff, *Variations of Structured Settlements*, Nat'l L.J., Oct. 14, 1985 at 15 (special section). In some instances a structured settlement might be reached when an all cash arrangement would not be acceptable to one party or the other. *See* Moore, *Structured Settlements: Considerations for Defense Counsel*, 17 Forum 1335 (1982).

We reverse and remand for an award to counsel for the plaintiffs in the amount of $68,332 consistent with the views herein expressed. Each party will bear its own costs, but those properly assessed to plaintiffs-appellees will be borne by their counsel, the real party in interest.