482 A.2d 1010

**William UBER, Jr., Late a Minor and His Parents and Natural Guardians, William Uber, Sr. and Gail Uber and William Uber, Sr. and Gail Uber In Their Own Right**

v.

**PHILADELPHIA TRANSPORTATION COMPANY.**

**Appeal of Paul PRUSS, Jr., Guardian.**

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed Oct. 5, 1984.

Irwin Paul, Philadelphia, for appellant.

Daniel M. Rendine, Philadelphia, for participating party.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

OPINION

WICKERSHAM, Judge:

Paul Pruss, Jr., guardian of the estate of William Uber, Jr., appeals from the decision of the Court of Common Pleas of Philadelphia County denying his petition to modify a prior order of the court incorporating a settlement agreement entered into by the parties.

In March of 1968, the law firm of Bernstein & Gembala brought an action on behalf of William Uber, Jr., then a minor, and his parents in their own right, against the Philadelphia Transportation Company for injuries sustained by the minor in an automobile accident. In March of 1981, William Uber, Jr. was declared an incompetent and Paul Pruss, Jr. was appointed as his guardian. Following a lengthy series of negotiations, the parties entered into a settlement agreement in May of 1981. The settlement agreement and release resulted from conferences between Bernstein and Gembala, plaintiffs' attorneys, and the defendant corporation. Irwin Paul, Esquire, attorney for Paul Pruss, Jr., guardian, participated in the negotiations.

In May of 1981, a settlement hearing based on these prior negotiations was held. The parents of William Uber, Jr., his guardian, the guardian's attorney, the attorneys for the plaintiffs, and the attorney for the defendant attended. On May 14, 1981, the court entered an order approving the settlement agreement.

On August 25, 1982, the guardian, Paul Pruss, Jr., appellant herein, filed a petition to amend the order of May 14, 1981. Appellant based this request on the case of *Johnson v. Sears, Roebuck, and Co.*, 291 Pa.Super. 625, 436 A.2d 675 (1981), a decision of this court filed on October 30, 1981, which set out a formula for computation of attorneys fees based on the facts of that case. Appellant argued that the *Johnson* case controlled the settlement agreement herein, and that therefore, the settlement agreement should

be amended to conform with *Johnson.* The court granted a hearing but limited it to legal argument only. On October 14, 1982, the lower court filed an opinion denying appellant's petition to amend the court's order of May 14, 1981. This appeal followed.[1]

Appellant states the sole issue in this appeal as follows:

Where the Superior Court has fixed a formula for determining counsel fees in a case where the settlement is funded by a downpayment of cash plus the purchase of an annuity insurance policy, may the Lower Court disregard the set formula and apply a different standard.

Brief for Appellant at "Table of Contents."

Instantly, the lower court correctly summarized the relevant provisions of the settlement agreement as follows:

Under the terms of this settlement SEPTA agreed to pay $250,000 to the incompetent['s] [sic] guardian. Thereafter, for the next 240 months (20 years), SEPTA guaranteed monthly payments to be paid to the guardian of incompetent's estate, "whether he survives the said 20 years or not." Thereafter, the guardian was to receive monthly payments for the incompetent's natural life.

Irwin Paul, Esquire, counsel for the guardian, agreed that the settlement was fair and reasonable.

1. Appellee argues that appellant waived his right to appeal in two respects: (1) he failed to file his appeal within thirty days of the entry of the original order as mandated by Pa.R.A.P. 903(a); and (2) he failed to file a petition to set aside the original order during the term of court in which it was entered as required by Philadelphia Rule of Civil Procedure No. 5, Star Rule No. 199. These allegations are based on appellee's contention that the May 14, 1981 order was final, and since appellant did not appeal from that order, he is precluded from attempting to modify it after the appeal period has passed. While appellee's argument is appealing, we note that the common pleas court's authority is at its widest reach when it is acting as an equity court seeking to protect the person or property of an incompetent. *Matter of Terwilliger,* 304 Pa.Super. 553, 450 A.2d 1376 (1982). The common pleas court has a continuing interest in an incompetent's estate. *Id.* Since the Court of Common Pleas of Philadelphia County felt that appellant's petition was worthy of consideration, we will not refuse to address the merits of his appeal.

Bernstein & Gembala, Esquires' counsel fee was to be $100,000 to be paid out of the $250,000 and, thereafter, Bernstein & Gembala were to receive ⅓ of each monthly payment as it became due and payable.

To finance this settlement, SEPTA purchased a Single Premium Annuity policy on the life of William Uber, Jr., for which it yielded the monthly sum of $1,650 per month, guaranteed for 20 years and the monthly sum thereafter of $1,250 for the incompetent's natural life.

Thus, when the incompetent dies, the monthly fees of Bernstein & Gembala terminate, if death occurs after 20 years.

Lower ct. op. at 1–2.

Appellant contends that the attorneys' fees awarded to Bernstein & Gembala pursuant to this settlement agreement do not comport with the formula set out in *Johnson, supra.* In *Johnson,* the attorneys' fees approved by the lower court were based on the following method of computation:

In computing the gross settlement value on which to base their one-third contingent fee, Respondents first reduced the minor's right to receive the life annuity payments to its present value. The projected payments ($23,000.00 per annum with a three (3%) percent yearly increment) were multiplied by the anticipated life expectancy of the minor (50 years as computed by an actuary and based on Standard Life Expectancy Tables) resulting in a total of $2,594,170.00. Then, this amount was reduced to present value by six (6%) percent simple interest resulting in a figure of $1,050,422.00. Respondents then added the value of the case payments, $600,000.00, to the present value of the annuity, $1,050,422.00, to arrive at a figure of $1,650,422.00, which represented the total of all present benefits under the settlement agreement. Respondents then set their contingent fee at $500,000.00, less than one-third of the total value of the settlement.

*Johnson, supra,* 291 Pa.Superior Ct. at 628, 436 A.2d at 677.

This court found that the computation method detailed above was unsatisfactory because

> it provides for the attorneys' contingency fee to be based on the total amount of the Johnsons' future possible payments despite the fact that the Johnsons may never receive that amount. After the expiration of the twenty year period for which the annuity payment is guaranteed, appellants only have a right to receive an annuity payment each year that their son actually lives. Nevertheless, Mr. Bernstein and Mr. Mazis avoided the inherent risk in the annuity settlement and based their attorneys' fees on the entire amount the Johnsons would receive if their son lived the normal life expectancy of a fifteen-year-old boy.

*Id.*, 291 Pa.Superior Ct. at 628–29, 436 A.2d at 677 (footnote omitted).

Appellee, Bernstein & Gembala, contends that the facts of the instant case can be distinguished from *Johnson,* and that, therefore, *Johnson* is not controlling. Furthermore, appellee argues that *Johnson* should not be applied to the instant case since it was decided five months after the entry of the lower court's order approving the settlement. We agree.

█ We must first decide whether we should retroactively apply the computation method set forth in *Johnson* to the instant case. Ordinarily, changes in decisional law which occur during litigation will be applied to cases pending on appeal. *McCloskey v. W.C.A.B.,* 501 Pa. 93, 460 A.2d 237 (1983).

> [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). *Accord August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981).

■ These legal standards are not applicable here. The instant case was not on direct appeal at the time *Johnson* was decided. The parties had agreed to, and the court had approved, a settlement five months before *Johnson* was filed. In those five months, the guardian had not requested a modification of the settlement and had not filed an appeal. He expressed no dissatisfaction with the settlement until after *Johnson* was filed. In fact, both the guardian and his attorney had participated in the settlement negotiations and had approved of the settlement. Given these circumstances, it would be inappropriate to modify the settlement based on *Johnson.*

Second, it would be especially inappropriate to apply *Johnson* to the instant appeal given the distinguishing facts of the two cases. In *Johnson,* the court found a problem with attorneys' fees computed on the basis of possible future payments that their clients might never receive. The settlement agreement in the instant case, however, contains no such inequitable result. Instantly, Bernstein & Gembala will receive one-third of each annuity payment *actually received* by their clients.[2] Though these payments extend into the future, they are, nevertheless, equitable.

The instant case was settled on facts and circumstances different than those which existed in *Johnson.* We will not disturb a structured settlement, agreed to by all parties and approved by the court, on the basis of the *Johnson* decision which was filed five months later.

Order affirmed.

2. We recognize that the *Johnson* court declined to accept a similar computation method. *Johnson, supra,* 291 Pa.Superior Ct. at 630, 436 A.2d at 678. In doing so, the court stated that while this method may be equitable, it could be "unwieldly and impractical." Instantly, the settlement agreement has been implemented; payments have been made. We find that the instant settlement agreement is workable and equitable.