CUTRER, Judge.
This case has been remanded by the Supreme Court[1] after it reversed the ruling of this court which had affirmed the trial court’s determination that the attorney’s contingent fee contract was void for lack of consent due to an error of fact.[2] The Supreme Court held that it was unnecessary to decide whether the contingent fee contract was valid. It concluded that the attorney rendered valuable services but the fee provided in the contingent fee contract would be excessive and unreasonable. The remand is with instructions to “award plaintiff a reasonable fee in light of the evidence of record and the factors set forth in the Code of Professional Responsibility.”[3]
Mrs. Rayner employed Mr. Pharis to represent her in the succession proceedings of her deceased husband. Pursuant to this employment, Mr. Pharis had Mrs. Rayner sign a contingent fee contract which would give Pharis 20% of all movable and immovable property, including stock share certificates and money to which she should be recognized as owner. The amount increased to 30% if any appellate work was needed.
Mrs. Rayner consulted with Mr. Pharis by telephone on March 29, 1978, and formally employed him on April 5, 1978. Mr. Pharis was dismissed from employment on April 24, 1978. Mr. Pharis filed suit against Mrs. Rayner seeking recovery under the contingent fee contract. The trial court dismissed the suit. On appeal, this court affirmed on the basis that the contract was invalid due to an error of fact. The Supreme Court granted writs and this remand followed:
On remand, the only issue before this court is the amount of the fee which shall be awarded to Mr. Pharis in light of the evidence found in the record and in light of the factors set forth by DR 2-106{B) of the Code of Professional Responsibility.[4]
The facts presented in this case are: Mrs. Rayner first telephoned Mr. Pharis on March 29, 1978, concerning' her interest in her husband’s succession and stock owned by her in a corporation. Mr. Pharis checked the public records on March 29 and 30,1978, to ascertain the status of Mrs. Rayner’s interest in the succession and corporation. Mrs. Rayner went to Mr. Pharis’ office on April 3rd pursuant to his call. This visit lasted for approximately an hour. A second meeting was scheduled for April 5th. This meeting between Mrs. Rayner, her daughter, Mrs. McRight, and Mr. Pharis lasted approximately two hours. Mr. Phar-is, along with the two women, went to the courthouse and reviewed the record. Phar-is informed them they needed legal action fast. At this time a contingent fee contract was signed. The next time Mrs. Rayner saw Mr. Pharis was April 24, 1978, the day she gave him oral and written notice of the termination of his employment.
During the period of employment, April 5 to April 24, 1978, Mr. Pharis did the following relative to his representation of Mrs. *725 Rayner: Mr. Pharis dictated a “Motion to Traverse the Sworn Descriptive List” and filed it on April 10, 1978. The descriptive list as filed by Mr. Sheffield did not show Mrs. Rayner to have a one-half ownership interest in the property (community) of her deceased husband’s succession. He drafted a suit to recover stock Mrs. Rayner had in the Central Electric Company of Alexandria which her son purchased pursuant to a buy-sell agreement. This suit was never filed. Mr. Pharis stated that he also had anticipated a lesion action against James Rayner for property sold to Rayner by his father. Mr. Pharis further testified that he contacted expert accountants and appraisers in anticipation of the suits and actions that he contemplated. He also talked with Mr. Sheffield, Attorney for the succession, on two or three occasions in regard to the problems that existed.
Mr. Sheffield stated that the first descriptive list was filed merely to get the administrator qualified and not to determine the rights of any parties. The list did not include Mrs. Rayner as half owner. On April 13, 1978, three days after Pharis filed the motion to traverse, the descriptive list was amended to show Mrs. Rayner’s interests. It is contested as to whether this result was due to the efforts of Mr. Pharis or whether it would have come in due course in the succession proceedings.
We shall now consider the factors as they relate to Mr. Pharis’ efforts.
(1)“The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.”
As is noted from'the record, Mr. Pharis did not keep time charts of his activities on behalf of Mrs. Rayner. The motion to traverse the descriptive list was five pages in length including the order and certificate of mailing to the other attorney of record. He dictated the stock transfer petition although he did not say how long it took. The petition numbered twelve pages. The situation may have been unusual but it posed no extremely difficult questions for such an attorney as Mr. Pharis who is experienced in succession proceedings. The other time spent was for telephone conversations and conferences as well as reviewing the public records as heretofore mentioned.
(2) “The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.”
Appellant Pharis concedes, and we agree, that this factor is not applicable.
(3) “The fee customarily charged in the locality for similar legal services.”
Mr. Pharis concedes that no local fee for such service was proven and therefore he does not argue this point.
(4) “The amount involved and the results obtained.”
Mr. Pharis argues that through his efforts, Mrs. Rayner was recognized as owner of property valued at $125,000.00. The testimony of the parties and attorneys to the succession proceeding conflict as to the results obtained by Mr. Pharis. As we consider all the circumstances brought out on trial of this case and the apparent satisfactory resolution of the succession, we conclude that the results obtained could have been due, in part, to Mr. Pharis’ efforts. Mr. Pharis’ actions will be compensated as services were provided in this regard.
(5) “The time limitations imposed by the client or by the circumstances.”
Obviously, with any litigation or judicial proceeding, time limitations are imposed on the parties. No doubt Mr. Pharis acted quickly in filing his motion to traverse, feeling the circumstances warranted it. The method or course of action by Mr. Pharis may not have been the only available one; however, such concern for his client’s interests will be remunerated in determining his fee.
(6) “The nature and length of the professional relationship with the client.”
The length of the employment, approximately 20 days, will be considered as a factor, but not a substantial factor, in determining an award.
(7) “The experience, reputation, and ability of the lawyer or lawyers performing the services.”
*726 Mr. Pharis’ witness testified that Pharis was an excellent lawyer of whom he thought highly. We agree that Mr. Pharis should command a fee equivalent to that of any other lawyer in the area.
(8) “Whether the fee is fixed or contingent.”
This factor has no application as the determination of attorney’s fees herein must be based upon quantum meruit.
After consideration of the services rendered by Mr. Pharis, along with the factors set forth herein, we conclude that a fee of $2,500.00 would be reasonable compensation for Mr. Pharis’ efforts.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside. It is ordered that judgment shall be rendered in favor of Pharis & Pharis, a partnership composed of attorneys F. Jean Pharis and James A. Pharis, Jr., and against the defendant, Mrs. Rayner, for the sum or $2,500.00 along with legal interest. The costs of the trial court and for this appeal are to be paid by the defendant-appellee.
REVERSED AND RENDERED.
APPENDIX
Before CUTRER, STOKER and LA-BORDE, JJ.
CUTRER, Judge.
This is a suit on a contingent fee contract by Pharis & Pharis, a partnership composed of attorneys F. Jean Pharis and James A. Pharis, Jr., for the collection of a fee in the amount of $31,615.09 allegedly owed by defendant, Mrs. Mary Elizabeth V. Rayner. From a judgment in favor of Mrs. Rayner, dismissing the plaintiff’s demands, plaintiff appeals.
The issue on appeal is whether Mrs. Ray-ner validly consented to a contingent fee contract of employment.
Mrs. Rayner was the wife of Elmer Ray-ner. Six children were born of this marriage. The family home was in Pineville, Louisiana. On June 9, 1976, Mr. and Mrs. Rayner were judicially separated and the community was dissolved though no settlement ever occurred. Approximately one year prior to the death of Elmer Rayner on January 23, 1978, the Rayners reconciled and resumed living together. The community regime was not re-established.
During his lifetime, Mr. Rayner formed a closely held corporation known as Central Electric Company of Alexandria, Inc. The firm was engaged in electrical contracting and engineering as well as in the retail selling of electrical supplies and fixtures.
Mr. Rayner left a will by which he named his children as legatees and declared that there would be no usufruct in favor of Mrs. Rayner. James Rayner, a son,, was named as testamentary executor and David Sheffield, an Alexandria attorney, was named as attorney for the succession.
Around the first of February 1978, a family meeting was held in the home of Patsy Rayner Delrie. Present at this meeting were Mrs. Rayner, the six children, and attorney David Sheffield.
The testimony of the children, Mrs. Ray-ner and David Sheffield was that Sheffield advised the group of the laws of descent and distribution. He also pointed out that Mrs. Rayner was the owner of one-half of the property by virtue of the prior separation judgment and that Mrs. Rayner would be recognized as such in the ensuing succession proceedings. Even though the will provided no usufruct for Mrs. Rayner, the children agreed to grant Mrs. Rayner the usufruct of the home.
At this meeting, Sheffield explained that there was a written stock purchase agreement by which the corporation would have the right to purchase the stock of a deceased stockholder. (This agreement was entered into between Elmer Rayner, James F. Rayner and Central Electric on March 22,1966, at which time the stock was valued at $78.00 per share. According to a provision of the agreement this remained the value of the stock for purposes of purchase by the corporation since no new value was subsequently assigned. A total of 1,000 shares was issued. Mr. and Mrs. Rayner held 950 shares of the stock as community *727 property. Of course, when the community was dissolved, Mr. and Mrs. Rayner owned an undivided one-half interest in the shares. The remaining 50 shares were owned by James F. Rayner.) At this family meeting, Mrs. Rayner inquired whether the stock purchase agreement would require her to sell her interest to her son. Sheffield responded that James Rayner had a right to buy her interest under this agreement. Mrs. Rayner was interested in retaining her stock interest in the corporation so that she could receive a monthly income as a stockholder rather than selling the stock.
Around the first of April 1978, Mrs. Ray-ner contacted James Pharis. The content of this conversation and subsequent meetings are somewhat disputed.
Mrs. Rayner testified that in the first part of April she contacted Mr. Pharis for only one reason and that was to consult with him about keeping her interest in the Central Electric stock rather than selling to her son. An appointment was made for April 3rd. The only item discussed was the stock. There was no discussion about a fee. Pharis said he would look into the matter for her.
On the afternoon of April 3rd, Mrs. Ray-ner received a call from Pharis. Mrs. Ray-ner testified that Pharis told her that she must take action right away or she would not own anything. This was the first mention, in the discussions with Pharis, of anything other than stock. Mrs. Rayner was quite upset by this news. Mrs. Rayner then called her daughter, Jeanette, and asked her to go with her to consult with Pharis.
The second meeting with Pharis took place on April 5th at 2:00 P. M. At this meeting, Pharis took Mrs. Rayner and Mrs. McRight to the courthouse and showed them the descriptive list which had been attached to the petition of James Rayner seeking to be appointed executor. The descriptive list made no mention of Mrs. Ray-ner’s interest in the property. Pharis also instructed Mrs. Rayner and Mrs. McRight to keep this representation secret. (Pharis’ testimony is essentially the same on this point.) Upon return to the office, Pharis told Mrs. McRight that her mother had more problems than just the stock. Mrs. Rayner was led to believe that her son and Sheffield might defraud her of her interest. Pharis then presented a contract to Mrs. Rayner and told her to read it. Mrs. McRight read the contract, then explained to Mrs. Rayner that Pharis wanted 20 percent. Mrs. Rayner responded that 20 percent was a lot of money. Mrs. Rayner’s complaint, that 20 percent was a lot of money, was met with Pharis’ response that she had no choice. She then signed the contract. Mrs. Rayner testified that she signed the contract because Pharis told her that if she didn’t take immediate action she would lose her entire interest in the property.
Pharis testified that Mrs. Rayner first called him with the complaint that she had received no funds from her son or Sheffield with which to operate her household. He stated that Mrs. Rayner gave no indication that there was a question concerning the sale of the stock. Pharis stated that he looked at the descriptive list attached to the initial petition for the appointment of an executor. He noticed that the list did not mention the interest of Mrs. Rayner. He became apprehensive that the Rayner heirs would get possession of the property, especially the movables, and would dispose of them to the prejudice of Mrs. Rayner. He stated that he thought it necessary that his representation of Mrs. Rayner be kept a secret under the circumstances.
On April 10, 1978, Pharis filed a motion to traverse the detailed descriptive list which had been filed by James Rayner as executor. On April 13, 1978, an amended descriptive list was filed showing Mrs. Ray-ner’s one-half interest.
David Sheffield, the attorney for the executor, testified that the first descriptive list was not intended to be a complete or final inventory. He stated it was filed simply to get the proceedings underway and that it was going to be amended because all of the assets had not yet been determined. Sheffield stated that Pharis did not contact him before filing the motion to traverse. *728 After the motion was filed, Sheffield called Pharis to inquire as to why the motion had been filed. Sheffield offered to give Pharis a letter recognizing Mrs. Rayner’s interest, that he would give him information about other assets to be included, and that he would be available to meet with Mrs. Ray-ner, Pharis and James Rayner to discuss the matter.
When James Rayner, the executor, was served with the motion to traverse, he called another family meeting. Rayner inquired of his mother as to the filing of the pleading. Mrs. Rayner responded that Pharis told her she did not own anything. Rayner explained to her that she owned one-half of all of the property. He proposed a meeting between Pharis, Sheffield, his mother and himself. Pharis refused to meet when Mrs. Rayner called to ask for such a meeting. After talking with James Rayner and the other children, Mrs. Rayner was convinced that her fear of losing her interest in the property was erroneous. After Pharis refused to meet with her, Sheffield and James Rayner, Mrs. Rayner decided to dismiss Pharis.
On April 24th, Mrs. Rayner called Pharis and told him to drop the suit. Later that day, Mrs. Rayner, accompanied by her son, delivered a letter to Pharis dismissing him. The succession was closed by judgment of possession dated July 11, 1978 and Mrs. Rayner received her share of the property. All of the children testified there was never any intent to defraud Mrs. Rayner of any of her property.
This suit was subsequently filed to recover that contingent fee allegedly due Pharis.
The trial judge accepted the defendant’s version of the events relating to the employment of Pharis. The trial judge found that the contract was void because Pharis intentionally or unintentionally “put Mrs. Rayner in such a state of fear that she signed the contract without really realizing what she was doing.” Further, the trial court found the contract was unconscionable and that the whole affair could have been avoided by a simple telephone call to Sheffield.
On appeal, Pharis & Pharis alleges that the trial court erred in finding that plaintiff failed to make due proof of its demands.
We cannot say, based on our review of the record, that the trial judge clearly erred in accepting the defendant’s version of the events. It is well settled that on appellate review, the findings of the trier of fact are entitled to great weight and should not be disturbed unless clearly wrong. On appeal, the reviewing court will not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial judge. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Matte v. Guillory, 370 So.2d 1299 (La.App. 3rd Cir. 1978).
The contract of employment is void for the lack of consent due to an error of fact.
LSA-C.C. art. 1819 provides as follows:
“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
1. Error; * * *”
LSA-C.C. art. 1821 provides as follows:
“That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.”
In the case of Cheramie v. Stiles, 215 La. 682, 41 So.2d 502 (1949), it was held that:
“The existence of an error of fact proceeding from ignorance of what really exists or the mistaken belief in the existence of facts which are the principal cause of and bear upon the motive for the yielding of consent to an agreement are sufficient grounds to set aside a contract.” 41 So.2d 502, at 504.
*729 Mrs. Rayner signed the contract under the mistaken belief that if she did not do so, she would lose her entire undivided one-half interest in all of the property. She relied upon the advice of Pharis in this regard. Pharis’ concern for the possible loss of Mrs. Rayner’s interest in the stock, upon examination of the original descriptive list, may be justified. However, Pharis’ conclusion that Mrs. Rayner was about to lose all of her property, without further inquiry, cannot be justified under the circumstances presented. The execution of the contract by Mrs. Rayner was an error of fact which was derived from the mistaken belief in the existence of facts that were the principal cause for Mrs. Rayner’s consent to the agreement. This error of fact is sufficient ground to set aside the contract. Thus, the judgment of the trial court setting aside the contract will be affirmed.
The trial court found that the plaintiff had not presented evidence upon which any recovery could be allowed on quantum me-ruit. Recovery on this basis is not urged on appeal.
For these reasons, the judgment of the trial court dismissing plaintiff’s demands is affirmed at plaintiff-appellant’s costs.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.

. 397 So.2d 1295 (La.1981).

. The unpublished opinion of this court has been made an appendix to this decision.

. Mrs. Rayner filed an “exception of no cause or right of action” in this court after the remand from the Supreme Court. We will not consider the exception as the Supreme Court has ordered this court to award reasonable attorney’s fees.

. “(B) * * *
“Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1)The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.”