490 So.2d 421 (1986)
Corwin B. REED and Edward J. Lassus, Jr.
v.
Sandra Serth VERWOERDT.
No. 85-CA-677.
Court of Appeal of Louisiana, Fifth Circuit.
June 2, 1986.
*423 Glenn L. Morgan, New Orleans, for defendant appellant.
Corwin B. Reed, in pro per.
Edward J. Lassus, Jr., in pro per.
Before CHEHARDY, KLIEBERT, and WICKER, JJ.
WICKER, Judge.
This appeal arises from a lawsuit on an open account for legal services. Corwin B. Reed (Reed) and Edward J. Lassus, Jr. (Lassus), attorneys, filed suit against Sandra Serth Verwoerdt (Verwoerdt) for the collection of legal fees allegedly owed to them in connection with their representation of Verwoerdt in a wrongful death and survival action. Also at issue were legal fees and costs the attorneys asserted were due with regard to their representation in certain domestic proceedings. The trial judge rendered judgment in favor of the plaintiffs/attorneys in the amount of Ten Thousand Dollars ($10,000.00), together with legal interest and costs for services he concluded were owed in connection with a contingent fee agreement entered into between the parties relative to the wrongful death and survival action. The judgment was silent regarding the alleged fees owed in connection with the domestic matters. It was also silent regarding Verwoerdt's reconventional demand asserting defamation, abuse of process and legal malpractice wherein she seeks a reduction in the fee, attorney's fees and damages of Ten Thousand Dollars ($10,000.00) and costs. Defendant, Verwoerdt, now appeals. We affirm.
On July 28, 1981 Verwoerdt's mother was allegedly struck by an automobile as she walked across the street. Her mother died on December 18, 1981, reportedly as a result of the injuries she sustained from the accident. Verwoerdt sought representation from Reed and Lassus. On March 29, 1982 a "Contract for Legal Services" was executed between the parties in which the attorneys were assigned a one-third contingent fee. Following negotiations with the alleged defendant's insurer, a structured settlement was finally approved by Verwoerdt on December 14, 1982. The settlement provided Verwoerdt with One Hundred and Five Thousand Dollars ($105,000.00) in a lump sum and Seventy-five Thousand Nine Hundred Sixty Dollars ($75,960.00) to be paid in monthly installments of Six Hundred Thirty-three Dollars ($633.00) over a period of ten years. On December 27, 1982 Verwoerdt executed a handwritten agreement in favor of the attorneys which provided for attorney's fees in the amount of Sixty Thousand, Three Hundred and Twenty Dollars ($60,320.00). Fifty Thousand, Three Hundred and Twenty Dollars ($50,320.00) of the total amount was to be paid at the time she received the lump sum portion of the settlement. The remaining Ten Thousand Dollars ($10,000.00) was to be paid out in monthly installments of One Hundred Sixty-six Dollars ($166.00) over a period of five years. The second agreement also provided an acceleration clause in the event of default.
*424 Verwoerdt paid the attorneys $50,320.00 in fees out of the lump sum and subsequently began receiving her monthly settlement checks in January 1983. She did not, however, pay monthly checks to the attorneys. After several unsuccessful attempts to contact defendant to rectify the situation, Reed and Lassus sent a formal demand letter for the full amount to her on August 3, 1983. In response, Verwoerdt mailed a check to them in the amount of One Thousand, Three Hundred Seventy-two Dollars and Eighty Cents ($1,372.80) with a notation "For settlement." The attorneys refused to accept the check with the notation since the offered figure appeared unrelated to the amount owing at that time.
As a result, the attorneys filed suit on October 4, 1983 to collect the remaining Ten Thousand Dollars ($10,000.00) in attorney's fees for the settlement, as well as fees incurred with regard to their representation in certain domestic matters. They also sought reasonable attorney's fees for pursuing the instant matter. Thereafter, Verwoerdt answered and included a reconventional demand for inter alia, reduction of the fee, malpractice and her attorney's fees.
Trial of the matter was held on March 4 and 7, 1985. Judgment was rendered on June 20, 1985 in the attorneys' favor as to the $10,000.00 in fees owed for the settlement. The judgment was silent regarding other matters. Thereafter, Verwoerdt perfected an appeal of the award of attorney's fees for the structured settlement and assigned the following errors:
1. That the trial court erred in holding that the "Hand drawn invoice" superseded the original retainer agreement when the latter agreement awarded attorney's fees greater than the original one, and
2. That the trial judge erred in failing to award the appellant a refund of unconscionable attorney's fees and by further failing to award her attorney's fees pursuant to L.S.A.-R.S. 9:2791.
IS THE DECEMBER 27, 1982 HANDWRITTEN STATEMENT BY VERWOERDT A VALID CONTRACT?
L.S.A.-R.S. 37:218 allows an attorney and his client to enter into a contingent fee contract. It provides in pertinent part that "[b]y written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or of property."
Appellant asserts that the trial judge erred in finding that the second agreement superseded the first one. The crux of appellant's argument is that she executed the second agreement under a mistaken belief that the attorneys were to receive a one-third contingent fee as had previously been agreed to in the initial retainer agreement. Although the attorney's fees comprised one-third of her total settlement, she asserts that based upon her calculations of present value that she mistakenly agreed to pay the attorneys a 39.77% contingent fee instead of a one-third contingent fee.
A contract will be considered to be void for lack of consent due to an error of fact. L.S.A.-C.C. Arts. 1819, 1821 (pre-1985); Cheramie v. Stiles, 215 La. 682, 41 So.2d 502 (1949). However, appellant does not present any expert testimony to substantiate her claim that she actually paid more than she agreed to pay. The second instrument she executed does not give any percentage. It merely sets out how the attorney's fees are to be structured in light of her structured settlement. Therefore, instead of receiving a lump sum, the attorneys agreed to collect only $50,320.00 of their portion with the balance of $10,000.00 to be paid over five years in equal monthly installments. Thus, the agreement expressly states the amounts to be paid in attorney's fees.
The trial judge upheld the validity of the second agreement as superseding the first one. He, therefore, gave little weight to her defense that she acted in error and lacked consent. In the absence of manifest *425 error or any abuse of discretion on the part of the trial court, its finding that the second agreement was valid should not be disturbed. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Moreover, the second agreement consists of a modification in that the parties have determined that the attorneys' fees would also be structured. The latter understanding is therefore inconsistent with the earlier agreement which merely provides for a one-third contingent fee and does not envision a structured settlement. The latter agreement is therefore controlling and supersedes the earlier understanding since all parties agreed to its terms at the time of its execution. Prisock v. Boyd, 199 So.2d 373 (La.App. 2nd Cir.1967).
IS THE CONTINGENT FEE REASONABLE?
The contingent fee concept allows plaintiffs to have quality representation which they could not otherwise afford. Clients, however, have the option of seeking other counsel and of retaining these on the basis of reasonable value for services rendered. The contingent fee contract is therefore based upon mutual consent. However, it is still subject to court protection should it be overreaching. Guilbeau v. Fireman's Fund Insurance Company, 293 So.2d 216 (La.App. 3rd Cir.1974); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978); Farrar v. Kelly, 440 So.2d 939 (La. 2nd Cir.1983).
Although the second agreement referred to in the discussion above is a valid one, such an agreement is subject to two limitations by the courts: namely, that the attorney earn his fee and that the attorney not collect an excessive fee. See Guilbeau, supra; Saucier, supra.
The Farrar court upheld as reasonable a 50% contingent fee contract. In determining whether the fee was excessive, the court stated that:
"[c]ontingent fee contracts are authorized by statute, L.S.A.-R.S. 37:218, and by the Louisiana Code of Professional Responsibility, DR5-103(A)(1) and (2) and DR 2-106(B)(8). Such contracts have been approved by the courts so long as they do not result in an attorney collecting a clearly excessive fee which has not been earned as defined by the Disciplinary Rules of the Code of Professional Responsibility. Saucier v. Hayes Dairy Products, Inc., supra; DR2-106." 440 So.2d 939, 942.
In Almerico v. Katsanis, 458 So.2d 158, 159 (La.App. 5th Cir.1984) we recognized the importance of turning to Disciplinary Rule 2-106(B) of the Code of Professional Responsibility for determining the reasonableness of fees. DR2-106(B) provides as follows:
[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Although the trial judge did not make any findings of reasonableness pursuant to the Code of Professional Responsibility, there is ample authority for us to examine the record and make the determination of *426 reasonableness. In Fowler v. Jordan, 430 So.2d 711 (La.App. 2nd Cir.1983) the court noted that "It is expressly within the province of the appellate courts of this state, moreover, to scrutinize and regulate attorney-client relations, and prevent the imposition of unjust fees. La. Const. Art. 5 [Section] 5(B)(1974); Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Ass'n, 378 So.2d 423 (La.1979); Saucier v. Hayes Dairy Products, supra." 430 So.2d 711, 716. In addition, the Louisiana Supreme Court in Pharis & Pharis v. Rayner, 397 So.2d 1295 (La.1981) on remand 406 So.2d 723 (La.App. 3rd Cir.1981) remanded a case concerning a contingent fee contract to the appellate court with instructions to award a reasonable fee in light of the record and DR2-106(B).
Furthermore, we have previously held in Becnel v. Arnouville, 425 So.2d 972 (La. App. 5th Cir.1983) that in the interest of judicial economy and fairness we should determine the reasonableness of a fee rather than remand the case. The instant case is similar to the case of Farrar, supra in that there was a substantial risk of no recovery and no fee and in which substantial successful services had been rendered. The testimony at trial revealed that the attorneys anticipated a difficult time in obtaining recovery for appellant. The alleged accident occurred on July 28, 1981 at which time comparative negligence was in effect. L.S.A.-C.C. Art. 2323. The facts allegedly indicated that the decedent was struck by an automobile while she was a pedestrian. Furthermore, she reportedly had an umbrella obstructing her view while walking in the rain. It was only through the alleged defendant's admission through deposition that it was revealed that the defendant was not wearing her glasses or her contact lenses at the time of the incident that their chances of recovery improved. Moreover, there were three prior negotiations with the insurer before the fourth settlement proposal was accepted by the appellant. She was satisfied with the fourth proposal since it gave her enough money for a down payment on a condominium.
While the appellant contends that the monthly payments from the insurance company are not guaranteed and that she would be ultimately paying their fees while receiving no further payments from them, we do not find evidence in the record or the settlement agreement which supports this contention. The settlement agreement indicates that all of her periodic payments are fixed, with appropriate survivorship provisions in the event she dies before receiving all of the monthly payments.
There was no expert testimony with regard to the use of present value in determining contingent fees relative to a structured settlement. Furthermore, no structured settlement specialist, tax expert or economist testified as to the present value of the settlement. Therefore, we cannot say that present value should have been considered. In Godwin v. Schramm, 731 F.2d 153, 158 (C.A. 3rd 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 250, 83 L.Ed.2d 187 (1984), it was noted that "the use of a structured settlement as a vehicle for resolving major tort litigation is `still in its embryonic states', see Hyland & Keeley, Using the Structured Settlement, Nat'l L.J., Dec. 19, 1983 at 15." The Godwin court also noted that there are differing opinions as to the computation of the fee. 731 F.2d 153, 158.
"[a] structured-type settlement of a damages claim involves a settlement agreement providing, at least in part, for a stream of payments in the future, as opposed to a settlement providing the plaintiff with one lump sum award at the present time." Structured-Settlement Attorneys Fees 31 ALR4th 95 at 96.
In the instant case, the substantial amount of the settlement indicates the quality of the attorneys' work and their state of preparedness to proceed to trial. The appellant recognizes that the settlement was favorable. It was large under the circumstances of the case and its provisions were beneficial to her since she was successful in receiving a large sum of money to put down on a condominium. The *427 settlement was achieved by the attorneys' skill and ability and they completely performed the professional services required by the retainer agreement.
Furthermore, in Brass v. Minnieweather, 468 So.2d 611, 615 (La.App. 2nd Cir. 1985), the court noted that whether the fee was contingent had a strong bearing on whether it was excessive. See also Pillow v. Board of Commissioners for the Fifth Louisiana Levee District, 425 So.2d 1267 (La.App. 2nd Cir.1982), writ denied 445 So.2d 1225 (La.1984).
Accordingly, for the reasons previously stated, our review of the record and DR2-106(B) indicates that the attorneys are entitled to the payment they earned.
We do not reach the issue of whether present value should have been used to compute the contingent fee in this instance since the parties executed a second agreement which indicated precisely the amounts to be paid by appellant and also provided for structured attorney's fees. In addition, appellant admitted that she had three years of college; she must have clearly understood the amounts she was to pay. The original retainer agreement was therefore modified in light of the structured settlement. In this opinion, however, we are not deciding whether a contingent fee retainer agreement which does not envision a structured settlement would be deemed as overreaching the bounds of reasonableness.
ARE THE ATTORNEYS GUILTY OF LEGAL MALPRACTICE PER SE?
Appellant's central argument is that the attorneys/appellees breached their fiduciary duty to her by failing to inform her that she was agreeing to pay them more than the one-third contingent fee to which she had previously agreed to in the initial contract entered into on March 29, 1982. She asserts that she was not informed with regard to the present value of the settlement. She contends that the failure to inform her constitutes legal malpractice per se. She further argues that the attorneys have violated EC-2-23 of the Code of Professional Responsibility, thereby committing malpractice. Thus far, however, the Louisiana Supreme Court has not viewed the Code of Professional Responsibility as formulated malpractice rules. Instead, the Louisiana Supreme Court has held that "[a]n attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." Ramp v. St. Paul Fire & Marine Insurance Company, 263 La. 774, 269 So.2d 239, 244 (1972).
In the instant case, no expert testimony was introduced with regard to the standard of care an attorney must meet in devising contingent fee contracts based upon a structured settlement. There is no expert testimony that the attorneys' and appellant's agreement to modify the original contract whereby $10,000.00 of the attorney's fees were also structured constitutes a violation of the standard of care. We find that this case of necessity needed expert testimony to establish the alleged negligence of the attorneys. It is therefore unlike the case of Watkins v. Sheppard, 278 So.2d 890 (La.App. 1st Cir.1973) in which no expert testimony was needed to establish that an attorney had a duty to investigate the date of an alleged accident or the case of Jenkins v. St. Paul Fire & Marine Insurance Co. et al., 422 So.2d 1109 (La.1982) in which the attorneys' failure to assert a claim timely did not require expert testimony to ascertain.
While Verwoerdt raises legal malpractice as a defense to the suit for collection filed by the attorneys, she also raises these claims in her suit in reconvention. As mentioned previously, the judgment was silent with regard to certain claims made by Verwoerdt as well as by the attorneys. We have previously held in Serrate v. Serrate, 472 So.2d 137, 138-139 (La.App. 5th Cir.1985) that:
"[i]t is settled law that the silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand, in the absence of an express *428 reservation. LeNy v. Friedman, 372 So.2d 721 (La.App. 4th Cir.1979). See also Gremillion v. Rapides Parish Police Jury, 430 So.2d 1362 (La.App. 3 Cir. 1983); Finance America Corp. v. Thibodeaux, 419 So.2d 543 (La.App. 3 Cir. 1982); Guaranty Bank & Trust Co. v. Carter, 394 So.2d 701 (La.App. 3 Cir. 1981)."
The judgment read as follows: "IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Corwin B. Reed and Edward J. Lassus, Jr., and against Sandra Serth Verwoerdt, in the sum of Ten Thousand Dollars, ($10,000.00), together with legal interest and costs of these proceedings."
Since evidence was offered at trial with regard to the alleged negligence of the attorneys and since the judgment does not expressly reserve her reconventional demand, we find that the trial judge rejected her assertion of a malpractice claim.
Considering the entire record which we are able to view, White v. C.F. Industries, Inc., 411 So.2d 511 (La.App. 1st Cir. 1982), writ denied 413 So.2d 509 (La.1982), we conclude that appellant failed to establish a prima facie case of legal malpractice. We also conclude that the failure of the attorneys/appellees to inform appellant of the present value of her settlement insofar as negotiating their contingent fee does not constitute legal malpractice per se.
IS VERWOERDT ENTITLED TO ATTORNEY'S FEES?
Appellant cites L.S.A.-R.S. 9:2781 as authority for this court to award her attorney's fees. Preliminarily, it is to be observed that appellant, Verwoerdt, was not the prevailing party in this action. Further, we find no merit to her argument since the statute only provides for such fees relative to a suit on an open account. L.S.A.-R.S. 9:2781 (pre-1985) provides that "[w]hen any person fails to pay an open account within thirty days after receipt of written demand ... that person shall be liable to the claimant for reasonable attorney fees ... [Emphasis provided]." Counsel for appellant has cited no authority nor can we find any which allows the defendant in a suit on an open account to be awarded attorney's fees for his or her defense. Thus, we cannot conclude that the trial judge erred by failing to award her these fees.
Accordingly, for the reasons set forth the judgment in favor of the plaintiff/appellees is affirmed. Appellant is to pay costs.
AFFIRMED.