544 So.2d 519 (1989)
Mr. and Mrs. John W. DOELL
v.
Mr. and Mrs. Richard L. LACHNEY.
No. 88-CA-905.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1989.
Alwynn J. Cronvich, Metairie, for plaintiffs/appellees.
John A.E. Davidson, Metairie, for defendants/appellants.
Before KLIEBERT, BOWES and WICKER, JJ.
WICKER, Judge.
Mr. and Mrs. Richard L. Lachney suspensively appeal a judgment against them which assessed damages in favor of Mr. and Mrs. John W. Doell for redhibitory defects in a roof. We affirm and amend.
The Doells purchased a house in Kenner from the Lachneys on May 28, 1987. Ten days later, the Doells noticed that the roof over the dining room leaked. They contacted Lachney, who did minor repairs on the roof. The Doells contacted Lachney again because the leaks continued. The parties were unable to reach an agreement about further repairs; and the Doells filed suit on September 3, 1987, and asked for damages for the defective roof. They also alleged defects in the roof gutters and electrical wiring.
The trial judge ruled in favor of the Doells in the amount of $3,017.00 plus interest for the replacement of the roof and repair of the ceiling; attorneys' fees in the amount of $1,000.00; court costs; and expert fees totaling $100.00. In his reasons the judge noted that the ten- or twelve-year-old *520 roof "was in need of replacing and was subject to leaking." He denied recovery for rusted gutters and electrical deficiencies, finding these defects were "easily available to inspection." He further found that the "condition of the roof was known or should have been known to the defendants and failure to disclose same makes them liable for the consequences."
The Lachneys complain that the Doells failed to prove the roof defects existed prior to the sale, that the cost of a new roof was awarded without deduction for depreciation, that the cost of an entire roof and not only the south portion was awarded, that a property condition clause in the agreement to purchase or sell limited their obligations, and that an award of attorneys' fees was unwarranted since there was no proof that the leak existed prior to the sale. The Doells did not appeal the denial of recovery for alleged redhibitory defects in the roof guttering and the electrical wiring, and we will not consider those claims.
The Doells testified that they saw the house several times prior to the sale and never noticed evidence of a leaking roof or stains on the dining room ceiling. Neither of them had any prior experience with purchasing a house. On one occasion they were unable to see the dining room, since the Lachneys were painting it. They knew the house was about ten years old but were not concerned about the roof, since they relied upon the existence of the American Home Shield Warranty which was supposed to cover everything but those items the Lachneys were leaving behind, such as the microwave, draperies, and the like. The F.H.A. (Federal Housing Authority) inspection indicated the roof was in good condition, and the house was advertised as having an excellent structural roof.
A week or ten days after the act of sale, it rained and water came through the dining room ceiling around the chandelier. Lachney caulked a nail hole with silicone, which did not stop the leaking. Lachney then offered to help Doell re-roof the house, but Doell was unwilling to get on the roof to do roof work. American Home Shield denied the Doell's claim on the grounds that the policy did not cover anything structural.
The Doells had the entire roof replaced at a cost of $2,800.00, which they had to borrow, since all their funds went into the down payment. Had they known of the defective roof, they never would have bought the house.
Gerald Colopy, an expert dry wall contractor, testified that it would cost $350.00 for him to repair the water-damaged sheetrock and tape, seal the water stain, and re-texture the ceiling. In his opinion, one rainstorm could have caused the damage.
William Nugent, a contractor, was called as an expert in roofing by both parties. He walked the entire roof for his inspection, since it is not possible to inspect a roof without getting on it, and an ordinary person would not recognize roof problems from the street. He found an asphalt shingle roof with a life expectancy of ten to twelve years in a condition about what he would expect on a house this age. On the south side, the shingles were completely deteriorated and crumbling up and there were spots of coal tar. The existence of coal tar patches indicated a prior leak problem. He couldn't tell how long the coal tar had been there, but it had been there at least thirty days and possibly as long as four years. The roof decking was also cracked. The back side shingles had not deteriorated as much as the south side, but the back side showed its age and had one spot of coal tar. The east, west and north sides showed buckling of the edge of the roof, which would cause the shingles to crack off during a heavy rain.
The amount of deterioration he found is common for a roof this age. It would be impossible to do spot repairs on the south side and probably not possible to do spot repairs on the other problem areas. The north, west, and east sides of the roof would not be expected to leak within the next year and had approximately one-to-two years' life under normal [New Orleans] conditions; but the south side of the roof needed immediate replacement. To do only the south side and later do the other three *521 sides would cost thirty percent more, and he recommended to the Doells the replacement of the entire roof.
He replaced the entire roof at a cost of $2,800.00 with a better quality roof, having fiberglass matting between the shingles and a twenty-year guarantee. For the difference in cost between this roof and an asphalt one, $250 to $300, he wouldn't recommend choosing asphalt.
The Lachneys testified the only problem they'd ever had with the roof was four years before the sale, and Lachney fixed that himself by applying roofing cement (coal tar) to the bad spot and any other spots which had worn spots or cracked shingles as preventive maintenance. They painted the dining room because the furniture left an outline on the walls. Their neighbor, Kathy Simonton, testified that on her daily visits she never saw evidence of leaking or stains on the ceiling. Beverly Shealey and Jane Shealey, Mrs. Lachney's mother and sister, would have testified they saw no leaks or stains.
The evidence before the trial judge was somewhat contradictory, but we believe it was sufficient to prove that the roof leaked prior to the sale and that the Lachneys knew or should have known that it leaked. The Lachneys painted the dining room apparently only days prior to the act of sale, the roof leaked only eight days after the act of sale, and there were coal tar patches all over the roof that had been placed there perhaps only a month prior to the act of sale. We will not disturb these findings, since we do not see manifest error in them or in the trial judge's apparent conclusions with regard to credibility. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring, Company, 283 So.2d 716 (La.1973).
The testimony of the Doells supports an action in redhibition or quanti minoris:

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
La. C.C. art. 2520. The defective roof was not discoverable by simple inspection. La. C.C. art. 2521. The testimony sufficiently proved that the defect existed before the sale. La. C.C. art. 2530. The Doells were entitled, under La. C.C. art. 2541, to a reduction in price (quanti minoris). Since the Lachneys were aware of the leak in the roof and failed to disclose it to the Doells, they are also answerable for attorneys' fees. La. C.C. art. 2545.
It is clear that a leaky or defective roof is a redhibitory defect which entitled the purchaser to a reduction in price.... In the instant case, plaintiffs have presented evidence, both direct and circumstantial, from which the trial court could reasonably have drawn an inference that the defects existed at the time of the sale.
. . . .
Slagle v. Morgan, 410 So.2d 371, 374 (La. App. 4th Cir.1982) (citations omitted) (where leaks in the roof appeared variously three days, one week, two or three weeks, and several months after the sale). "[T]he appearance of certain types of defects within a relatively short time after purchase may lead to the reasonable inference that the defects existed at the time of the sale." Trigg v. Camper Village, Inc., 424 So.2d 1085, 1087 (La.App. 1st Cir.1982), writ den. 429 So.2d 134 (La.1983).
The Lachneys claim that their liability to the Doells is limited by the agreement to purchase or sell executed between them. The relevant portions of that contract are found in the Property Condition Clause and the language in the margin alongside that clause.
*522 
We do not find that the Doells have waived any rights to which they are entitled under the law as a result of this clause. A waiver of the warranty against redhibitory vices "must be written in clear and unambiguous terms, it must be contained in the sale ... document, and it must either be brought to the attention of the buyer or explained to him." Tuttle v. Lowrey Chevrolet, Inc., 424 So.2d 1258, 1260 (La.App. 3rd Cir.1982).
The Lachneys themselves were apparently not aware of the limitations of the American Home Shield warranty they were providing the Doells, although they were seasoned real estate owners. Their testimony leads us to believe that they intended the language in the margin to apply to those items they were leaving behind: the refrigerator, stove, microwave, draperies, and the like. Evidence of this intent is found on the first page of the agreement to purchase or sell, in a clause which reads, "Seller does not warrant fridge [sic], microwave, stove or pool. These items are not covered by AHS and are in working order as of acceptance of this contract."
The first paragraph of the standard-form clause refers to "appliances ... [and] heating, cooling, electrical and plumbing systems." Those appliances and systems "will be in working order." The roof, on the other hand, which is certainly neither a system nor an appliance, "shall be free of leaks." This latter sentence seems to impose upon the Lachneys a mandatory duty to ensure that the roof is free of leaks.
In the second paragraph, which imposes upon the Doells the obligation to make inspections in default of which they are deemed to accept and approve, refers only to "systems and appliances." Again, the roof is neither a system nor an appliance.
In the fifth paragraph, there is a limitation of the Lachneys' liability to $300.00; and the Lachneys argue that this acts as a limitation on any and all liability they may have to the Doells. By its language, however, this paragraph is not applicable to these facts. It refers to repairs which cost less than $300.00 to be made prior to the act of sale; and it gives the Lachneys the option, if the needed repairs are more than $300.00, to declare the agreement null and void. Nothing in the language of this clause limits the Lachneys' post-sale liability to the Doells.
The trial judge's reasons and judgment are silent with regard to this issue. We therefore consider that he rejected this theory of defense. Reed v. Verwoerdt, 490 So.2d 421 (La.App. 5th Cir.1986). We find *523 no error in his apparent refusal to consider these alleged defenses.
The proper measure of damages is "the difference, at the time of the sale, between the value of the thing sold in its defective condition and its value as warranted..., `the amount necessary to convert the unsound structure into a sound one', ... or ... `the cost of repairs necessary to make the thing whole.'" Lemonier v. Coco, 237 La. 760, 112 So.2d 436, 438 (La.1959) (citations omitted), appeal after remand 130 So.2d 414 (La.App. 4th Cir. 1961). In a case of this sort, the Doells should be entitled to the difference in value between a non-defective and a defective ten-year-old roof. Tardo v. Seither, 452 So.2d 339 (La.App. 4th Cir.1984). See also: Fraser v. Ameling, 277 So.2d 633 (La. 1973); Foret v. Kennedy, 459 So.2d 1239 (La.App. 1st Cir.1984); Slagle v. Morgan, supra. The Doells had the burden of proving with reasonable certainty the amount by which they should be compensated. Reynoir v. Succ'n of Hero, 513 So.2d 405 (La.App. 4th Cir.1987).
The trial judge has a great deal of discretion in this determination, and he "must ascertain what the parties actually bargained for and attempt to do justice to all parties without unjustly enriching one party at the expense of the other." Simmons v. Percy, 423 So.2d 1295, 1298 (La.App. 4th Cir.1982), writ den. 430 So.2d 75 (La.1983).
A damage award in a redhibition or quanti minoris action is a question of fact for the trial judge, and his determination should not be disturbed in the absence of manifest error or abuse of his wide discretion. Newman v. Dixie Sales and Service, 387 So.2d 1333 (La.App. 1st Cir.1980). Nevertheless, we find in this case that the trial judge did err and that the Doells have been unjustly enriched at the expense of the Lachneys. The court awarded the cost of an entire new roof when only one side of this four-sided roof leaked and needed replacement. Evidence in the record in the form of an estimate by the parties' acknowledged expert put the cost of replacing only the defective portion of the roof at $975.00. In addition, the Doells, who knowingly purchased a ten-year-old house which had a roof near the end of its life expectancy (although the Doells did not know this), ended up with a roof of better quality with a twenty year guarantee. We do not believe that the Doells bargained for or expected to receive a brand-new roof for the entire house at the time they entered into the agreement to purchase. "Since the house was purchased with an old roof some deterioration could be anticipated, and to allow full recovery for a new roof would constitute unjust enrichment." Simmons v. Percy, supra at 1298.
Under these circumstances, and with the intention "to do justice to all parties without unjustly enriching one ... at the expense of the other", we believe that the proper measure of damages for the defective south portion of the roof is the estimated cost of its replacement, without depreciation. This is sufficient to convert the unsound roof into a sound one.
We consequently amend the trial court's judgment to award the Doells $975.00 for the defective roof and $350.00 for the sheetrock repairs, or a total of $1,325.00; plus accumulated interest; $1,000.00 in attorneys' fees; and costs. Since the Lachneys have been granted at least a part of the relief for which they have appealed, we decline to increase the attorneys' fees to include an award for legal services on appeal.
AFFIRMED AND AMENDED.