hWICKER, Judge
This appeal arises from a suit on an open account filed on behalf of LaPlace Sand Company, Inc. (LaPlace), plaintiff/appellant, against Cherokee Barge Lines, Inc. (Cherokee), defendant/appellee, in which LaPlace seeks payment of $17,870, attorney’s fees, and costs for allegedly furnishing labor and *1265 material in connection with fleeting and pumping charges for Barge BH-266, a barge owned by Cherokee. Cherokee filed a reeon-ventional demand seeking damages for the alleged wrongful seizure of the barge. The trial judge dismissed LaPlace’s suit and ordered that the barge be ready for retrieval by Cherokee within 24 hours. The judgment was silent as to the reeonventional demand.[1] LaPlace now appeals. We affirm.
Appellant specifies as errors the trial judge’s dismissal of its claim and the trial judge’s ordering retrieval of the barge. We note that the portion of the judgment, which was rendered August 25, 1997, ordering La-Place to have the barge ready for retrieval by Cherokee within |224 hours, has become moot. The judgment was not suspended since LaPlace took a devolutive appeal rather than a suspensive appeal. The trial judge effectively granted a mandatory injunction, the term for which has long since lapsed. We do not address appellant’s issues relative to this portion of the judgment since no practical result can follow. See Landry v. Louisiana Dept. of Public Safety and Corrections, 595 So.2d 377 (La.App. 3rd Cir.1992) and cases cited therein.
With regard to the dismissal of its claim, appellant argues the trial judge committed legal and manifest error. We disagree.
The testimony at trial set forth the following. On January 17, 1996 Nathaniel Massi (Massi), the owner and President of LaPlace, “purchased” Barge BH-266 from Ron Trox-ler (Troxler) for $17,500. However, Cherokee was the owner of the barge. Cherokee was owned by Bill Hindon (Hindon). On February 1, 1996 Hindon reported the missing barge to Captain Bobby Hay (Hay) and Detective C.J. Dester (Dester) of the Sheriffs Office. Hindon also provided Hay with documentation he was the owner. Troxler was arrested for theft. When Hay learned of the theft, Hay was not in a position to physically remove the barge. Hay told Massi to hold the barge. It was Hay’s intention that Hindon use a pilot of his choice to remove the barge from Massi’s possession. By the time the theft was discovered, Massi had possession of the barge for two weeks. During the two-week period Massi used the barge to hold material he had taken off another barge. Massi’s business consisted primarily of buying barges • and cutting and hauling them for scrap. Thus, at the time Massi was informed of the theft, the barge was loaded with material belonging to Massi. Hindon subsequently attempted to remove the barge after allowing Massi time within which to clear the barge of Massi’s materials. Hindon was not allowed to remove the barge. Hindon sent bills to Massi for rental charges, and Massi sent bills to Hindon for fleeting and storage charges. At the time of trial on August 20, 1997 Massi still retained possession of the barge.
Massi contends he is owed storage and fleeting charges based on a duty imposed on him by the Sheriffs Office to hold the barge. Massi also contends that the items owned by him which were in the barge initially were substantially removed before Hindon sought return of the barge. However, at trial, Mas-si testified that at the time of trial he still had pieces of |3stored pipe on the barge. He explained that the barge took up space and if the barge were not on his property he would store the pipe on the ground. He also admitted that when he unloaded the scrap initially contained in the barge, he did so with a crane. This resulted in trash falling off in big pieces into the barge. Therefore, Massi’s testimony reveals that the barge has never *1266 been free of material used in Massi’s business.
Massi testified that Hay told him to keep the barge and that he (Massi) was in charge of it. Massi continued to pump the barge to keep it afloat while he waited for the owner to retrieve it. At the time he spoke to Dester he was willing to release the barge to the owner; however, Massi needed three weeks to remove the cut iron and steel he had placed on the barge. Massi testified that once the barge was substantially clear of his materials, the owner did not want to retrieve it because the water was too high and to do so would be dangerous. Massi continued to have his employees pump the barge twice a week. Massi stated that if he had not pumped out the barge, it would have sunk. Massi also stored the barge. Finally, in May 1996 a dispatcher from a fleeting company called Massi in order to make arrangements to pick up the barge. Massi refused. Massi stated that Hindon had been sending him bills for rental of the barge at a rate of $100 per day. Massi denied ever having a contract with Hindon for rental. He also denied using the barge as part of his business once he learned it had been stolen. He stated his sole use of the barge was to keep it afloat and to store it as directed by the Sheriff’s office. Nevertheless, on cross examination he testified that as of the date of trial on August 20, 1997 he continued to use the barge to store pipe. On cross examination he admitted he never had a contract with Hindon regarding the barge. He stated that Hindon never hired him to fleet, pump, or do anything with the barge but that the Sheriff’s Office hired him to do so. He testified it was the Sheriff’s office through Hay who told him to keep the barge and not to let it go anywhere. He never sued the Sheriff’s Office for the fees nor did he submit invoices to them. On cross examination he stated that as of the date of trial he still refused to release the barge to Hindon.
In response to Hindon’s request for rental, Massi sent Hindon bills for maintenance of the barge.
Massi identified a letter dated April 17, 1996 which was written by his attorney to ^Hindon indicating Massi’s refusal to pay rental charges and stating that Massi would be willing to enter into an arrangement for pumping and dry docking the barge in order to keep it from sinking.
Captain Hay testified as follows. Hay stated it was his intention that Hindon remove the barge as soon as possible. He never discussed with Massi possession of the barge on an indefinite basis. He stated it was “absolutely not” his intention to hire Massi to perform fleeting or storage services.
When Hay inspected the barge, he noticed that Massi had contents from a dismantled barge on the vessel. Massi was to clean out the barge as expeditiously as possible. However, as of the date of trial Hindon did not yet have the barge. Hay stated he had no knowledge of any contract between Hindon and Massi regarding the barge. It was never Hay’s intention to hire Massi to protect the barge or to store it. He never acted as an agent for Hindon.
On cross examination Hay stated that Massi was told to hold the barge as evidence of a crime. Hay did not offer any instructions to Massi as to whether the barge should be allowed to sink. To do so would have been beyond his expertise. The issue of whether Massi had to keep the barge afloat never arose. The major problem initially was that Hindon could not retrieve the barge because it was loaded with scrap belonging to Massi.
Hay testified he never hired Massi to fleet the barge. He explained that when he told Massi to hold the barge he (Hay) had no concept what fleeting and storage entailed.
Detective Dester testified as follows. Since the investigation of the theft began, Dester spoke to Hindon more than a dozen times. Hindon identified the barge as his barge, however, the barge was loaded with scrap iron owned by Massi. The barge was going to be unloaded and released to Hindon, however, the release did not take place. Massi felt he was caring for the barge which was leaking and Hindon felt he should have *1267 the barge released. Hindon then started to charge rental for the barge. Since the parties never reached an agreement for the release of the barge, the following civil action took place.
Dester also stated that Hindon contacted Dester seeking release. Dester tried to mediate but was unsuccessful.
Dester denied hiring Massi to do anything to the barge. He testified he was unaware |5of any contracts between Hindon and Massi concerning the barge.
Charles L. Augustine (Augustine) testified as follows. He assisted Hindon in attempting to retrieve the barge by sending a tugboat for the barge. He sent a boat twice but Massi refused to allow removal of the barge. Over the past year and a half he spoke to Massi about ten or twelve times seeking the release of the barge. Augustine was also present with Hindon and Dester the day the barge was examined. On that date the barge could not be moved because it contained material. Augustine testified that if Massi agreed to release the barge he could have a tugboat remove it within the next day or so. He could also have removed the barge within the last eighteen months if allowed to do so. Hindon has called him on almost a daily basis in an attempt to get his barge returned.
Hindon testified as follows. He owns Barge BH-266. He was certain the barge was at Massi’s location. He has made frequent attempts to recover the barge. Toward the end of January 1996 Massi had cut up a small ship or barge and placed the scrap in the Hindon barge. Hindon told Massi that if he needed to take the barge somewhere to unload it he had no objection. Mas-si told him he would unload it by pulling the barge up to the bank. Hindon told Massi not to pull his barge to the bank because this would damage the barge. Hindon did not know how Massi unloaded the barge. Hin-don told Massi he had no problem with Massi using the barge long enough to get the scrap out, for a week or 10 days.
Hindon testified that in March 1996 he intended to take the barge that day. He could not take it because there was still a considerable amount of scrap in it. He tried pulling up with a tugboat and taking it but the tugboat pilot was told not to take the barge. Massi kept barges around the Hin-don barge so tugboat pilots could not get to the barge.
Hindon stated he never hired Massi to perform services for him. He never had a contract with Massi. He never requested Massi to fleet his vessel, pump it or pull it on dry dock. He has continued to attempt recovery of his barge for the past nineteen or twenty months.
Hindon testified he never had an agreement with Massi for the rental of the barge although he admitted sending invoices for rental. Around February 1, 1996 Massi told him he would have the scrap removed but when Hindon saw the barge on March 15, 1996 there was Rstill scrap in the barge. Massi refused to release the barge. Hindon stated that he therefore assumed Massi wanted to charter the barge. Hindon then sent him a bill. Massi responded by sending him a bill for fleeting and pumping.
On rebuttal, Massi testified as follows. He stated that the barge was only good for scrap. He had one conversation with Hindon in which Hindon told him he was coming down to talk. However, Hindon’s plane was snowed in Memphis and he never came to talk.
Massi testified he unloaded the scrap as he had been instructed. He called Dester to ask why the barge had not been picked up. He denied telling Hindon he was going to push the barge onto the bank. He denied pulling the barge to the bank. Instead he took his crane and unloaded the barge. He stated that the pieces left in the barge were trash from the iron that fell off in big pieces as a result of his unloading process.
Massi stated that the only attempt Hindon made to pick up the barge after February 1, 1996 was in April or May. Massi testified he refused at that time to release the barge because Hindon was supposed to remove the barge at an earlier date.
*1268 Massi stated he spoke to Augustine a dozen times after January 1996. He told Augustine he was not going to release the barge because Hindon did not come to retrieve it when he was supposed to. He also stated no one ever called him about picking up the barge.
On cross examination Massi stated that because Hindon did not pick up the barge within a certain period of time he decided to punish him and charge him.
Massi also testified that in December 1996 he called CGB, a fleeting/towing company, to come for the barge but they refused.
The trial judge reasoned as follows:
... approximately two weeks [after Massi had possession of the barge] he did in fact gain knowledge that the barge had been stolen. At that point according to the testimony presented he was instructed by Detective Hay to hold on to the barge until such time as an arrangement could be made between the own [sic] and Mr. Massi. Now, the testimony that was uncontradiet-ed was that there never an [sic] indication this hold would be indefinite but at some point Mr. Hindon would be making arrangements to retrieve his barge. But, there was also testimony on that particular day when Detective Hay was present at the site of the barge the barge could not be removed at that time because it had been utilized by Mr. Massi for storage purposes and contained a lot of equipment that made transfer of the barge impossible at that time. Now, that could not be attributable to Mr. Hindon because Rhe was the innocent victim at that point. At some point later we are not exactly where but negotiations between the two of them fell through. Mr. Hindon testified that he did in fact speak to Mr. Massi by telephone. Mr. Massi only acknowledges a short conversation initiated by him that would [sic] talk later in details when he did in fact arrive. That in fact never happened. But, the testimony clearly states’s [sic] that even though Detective Hay or Dester [sic] Mr. Massi knew that Mr. Hindon wanted the return of his barge. At some point he indicated that he would not release the barge because I believe he had incurred expenses in fleeting and pumping of the barge.
This suit is on an open account ... The key word is “contracting.” There is no evidence is [sic] this case there was ever a contact [sic] between Mr. Hindon and Mas-si concerning this barge. Therefore without any such agreement there can be no open account.
We find no manifest error in the trial judge’s factual conclusion that there was no agreement between Massi and Hindon relative to storing and fleeting charges billed by Massi. However, on appeal, appellant further argues:
There is ample evidence to demonstrate that the duty imposed on LaPlaee Sand by the St. John Sheriff’s Office to maintain the barge, with the knowledge and consent of Cherokee until such time as Cherokee retrieved it, created an obligation for the benefit of a third party (Cherokee).
La. Civ.Code art. 1978 provides:
A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual, consent without the beneficiary’s agreement.
In State Farm Fire & Cas. Co. v. Williams, 486 So.2d 849, 851 (La.App. 1st Cir.1986) the court explained:
It is well settled that a stipulation pour autri must clearly reveal the intent of the contracting parties to stipulate some advantage for the third party. Teachers’ Retirement System of Louisiana v. Louisiana State Employees Retirement System, 444 So.2d 193 (La.App. 1st Cir.1983), rev’d on other grds 456 So.2d 594 (La.1984); HMC Management Corporation v. New Orleans Basketball Club, 375 So.2d 700 *1269 (La.App. 4th Cir.1979), writs denied, 378 So.2d 1384, 379 So.2d 11 (La.1980). In addition, the fact that a third party may incidentally derive a benefit from a contract does not in and of itself mean the contract contains a stipulation pour autri. Teachers[] Retirement System of Louisiana, swpra.
Appellant correctly notes that Hay instructed Massi to hold the barge. However, Hay testified he never discussed with Massi indefinite possession of the barge. He also testified it |8was “absolutely not” his intention to hire Massi to perform fleeting or storage services. Furthermore, he stated he never acted as Hindon’s agent. He merely asked Massi to hold the barge as evidence of a crime. He never gave Massi any instructions as to whether Massi should be allowed to let the barge sink. He explained that this area was beyond his expertise. When he told Massi to hold the barge, Hays had'no concept what fleeting and storing entailed. He started that the major problem was that Hindon could not retrieve the barge because it was loaded with scrap belonging to Massi. Dester also denied hiring Massi to do anything with the barge.
Hindon testified that in March 1996 he attempted to retrieve the barge but it was still loaded with scrap. Massi testified on direct examination that three weeks after being notified the barge was stolen, he had removed the scrap. However, on rebuttal Massi admitted that although he unloaded the scrap as instructed, there was still trash from iron that fell off in big pieces after he unloaded the scrap with a crane. Furthermore, he admitted he continued to use the barge for scrap at the time of trial. He explained that thé barge took up space he would normally use to store scrap. Thus, Massi continued to ignore Hindon’s request to remove scrap from the barge in order for Hindon to retrieve the barge. His failure to do so, coupled with his refusal to release the barge, account for the barge’s remaining on his property. Under these circumstances we find no error in the trial judge’s dismissal of his claim for costs on the theory that the sheriffs office created an obligation for the benefit of a third party. The trial judge attached great weight to Hay’s testimony that no contract was ever entered into between Hays and Massi. We cannot say she was manifestly erroneous in doing so.
Appellant further argues that he is entitled to recover based on a maritime lien. However, he filed suit on an open account. The lien issue was raised at trial and objected to by opposing counsel. Through Hay’s testimony, LaPlace’s counsel sought to raise the issue of a federal maritime lien justifying Massi’s retaining possession of the barge for work performed on the vessel. Defense counsel objected to this line of questioning since the suit was one on open account and not one for sequestration or attachment. He stated there were no liens recorded on this property nor any court order seizing the property. The trial judge sustained the objection to this line of questioning. Furthermore, there is no evidence of a maritime lien |9in the record. The trial judge did not err in characterizing the suit as one on an open account.
Accordingly, for the reasons stated, the judgment is affirmed at appellant’s cost.
AFFIRMED.

. Trial proceeded on the reeonventional demand as well as on the main demand. In Ernst v. Bassett, 521 So.2d 414, 416 (La.App. 5th Cir.1988) we held:
"the silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand, in the absence of an express reservation.” Serrate v. Serrate, 472 So.2d 137, 138-39 (La.App. 5th Cir.1985). See also, Reed v. Verwoerdt, 490 So.2d 421 (La.App. 5th Cir.1986).
Therefore, the judgment includes a rejection of Cherokee’s reeonventional demand. Cherokee has not appealed the judgment rejecting its claim.